## POPE et al. v. HOOPES et al.

### (Circuit Court of Appeals, Third Circuit. November 28, 1898.)

### No. 2.

1. REFORMATION OF CONTRACT—SUFFICIENCY OF EVIDENCE — PRESUMPTION OF CORRECTNESS.

A court of equity cannot reform a written contract except upon clear proof of fraud or mistake, and where there is no evidence of fraud, and the testimony of the parties is in direct conflict, the presumption that the contract as made expressed the true agreement must prevail.

2. SAME—MISTAKE DUE TO NEGLIGENCE.

A court cannot relieve a party to a contract from a mistake due to his own negligence.

3. SAME—OPTION TO PURCHASE PROPERTY—POWER OF COURT TO EXTEND TIME.

Where parties, having, by a written contract, an option to purchase property therein described within a specific time, decline to make the purchase within that time, on the ground of a mistake in the description as expressed in the contract, and bring a suit to reform such description, and to enforce the contract as reformed, the court cannot, on an amended bill, extend the time within which the plaintiffs may elect whether or not they will accept the property as described in the contract, and decree a specific performance, as against the defendants, in the event of such acceptance.

Appeal from the Circuit Court of the United States for the District of New Jersey.

This was a suit in equity by Elmer E. Pope and another against William G. Hoopes, Jr., and others for the reformation of a written contract, and its specific enforcement against the defendants as reformed. Plaintiffs appeal from a decree dismissing the bill.

The following opinion was delivered in the circuit court by KIRKPATRICK, District Judge:

"In October, 1894, Elmer E. Pope and Calvin N. Dotson, the complainants, entered into an agreement in writing with the defendants, in and by which they leased from the defendants a certain piece of ground in Atlantic City, N. J., for the period of two years, at a rental of $500 for the first year and $600 for the second year, which in the agreement was described as lying on the northerly side of the board walk and westerly of Connecticut avenue, and had a frontage of 50 feet on the board walk and of 340 feet on Connecticut avenue. The agreement also provided that the parties of the first part thereto (the defendants herein) would sell to the complainants herein, the parties of the second part, the following described lots of land, situate in said Atlantic City, bounded and described as follows: 'Beginning at a point in the westerly line of Connecticut avenue five hundred feet south to the southerly line of Connecticut avenue, and running thence, first, westerly and parallel with Oriental avenue, fifty feet; thence, second, southerly, at right angles to Oriental avenue, between parallel lines, of the width of fifty feet, with the westerly line of Connecticut avenue, for the easterly boundary of the same, to the exterior line of the riparian commissioners as established in the Atlantic Ocean,—at the expiration of one year from the date thereof, for the sum of fifteen thousand dollars, provided the parties of the first part had not sold said property before that time.' It also provided that the parties of the second part might purchase 50 feet on the rear or northerly side of the above-described tract fronting on Connecticut avenue, with a depth of 175 feet, at any time during said year, for the sum of $3,500, provided said lot was not previously sold to other parties. Under this agreement the complainants entered into the possession of the leased premises, and erected thereon a more or less substantial building for exhibition purposes, at a cost

of several thousand dollars. On the 6th of September, 1895, the complainants notified the defendants that they would be prepared to accept deeds for the two tracts mentioned in the agreement, and pay the cash price for the same. It was soon discovered that there was a difference between the parties as to the quantity of land to be sold under the contract, the complainants herein insisting that the first tract was to be identical in its location and dimensions with that included within the lease, while the defendants contended that it comprised only that particularly described in the agreement, and which on the line of Connecticut avenue, measuring northerly from the board walk, fell short of that described in the lease by upwards of 100 feet. The location of the second tract on which complainants had an option was consequently disputed, inasmuch as it adjoined the first tract on its northerly side. On the 16th of September, 1895, and within the year after the date of the agreement, the complainants herein tendered to the defendants the sum of $18,500, and demanded, for the sum of $15,000, a deed for a lot having a frontage of 50 feet on the board walk, and running northerly 340 feet; and for $3,500 a deed for a lot adjoining the above on the north having a frontage of 50 feet on Connecticut avenue, with a depth of 175 feet. The defendants declined to make deeds for the properties demanded, but offered 'to convey' to complainants 'the property described in said agreement in' their 'covenant to convey.' This offer of the defendants was refused by the complainants, and on the 8th day of October, 1895, they filed their bill of complaint herein, setting out that by a mistake, unintentional, or intentional and fraudulent, the defendants did not truly describe the premises which they by the agreement had taken the option to purchase, and praying that the agreement be reformed so that the description of the lots to be purchased should conform to the ones they had leased, and that a decree be made compelling the defendants to convey the premises accordingly. Testimony was taken from which it appeared that at the time of making the said agreement there were present Elmer E. Pope and Calvin N. Dotson, the complainants, and Allen B. Endicott, William G. Hoopes, and Barclay H. Bullock, the defendants, and a Mr. Rogers, who was then in the employ of Adams & Co., real-estate agents, who were acting for the complainants. Pope and Dotson both testify that the only pieces of ground spoken of at the time of drawing the agreement were the one included in the lease, which was 50 feet front on the board walk by 340 feet deep on Connecticut avenue, and the lot adjoining on the north, having a frontage of 50 feet on Connecticut avenue by a depth of 175 feet, and that they supposed that the option to purchase covered the same premises which were included in the lease; while Endicott, Hoopes, and Bullock swear that they distinctly refused to sell to the complainants the lot which they were willing to lease, and that they at that time gave complainants as the reason for such refusal that the sale of such a plot would not accord with their general plan of sale of the property of which this lot was a part, and that it would leave upon their hands a large piece of ground which would be inaccessible and practically worthless. They also say that it was because the land to be included in the lease and the land to be sold differed that a separate description was used for each,—a more particular description used for the land to be sold, and the beginning point located with reference to a fixed and unchanging monument, the same as had been used by them on that day in making sales of property on that tract to other parties. The testimony of the complainants and defendants is irreconcilable. Mr. Rogers, who both parties agree was present and took part in the negotiations, and at whose suggestion the option on the tract 50x175 was granted and taken, was not called as a witness. It was incumbent upon the complainants to prove that the written instrument did not truly set forth the terms of the agreement, and their failure to give the court the benefit of the testimony of this disinterested witness must work to their disadvantage. Upon the evidence presented, it is impossible for the court to say that the proof in demonstration of a mistake in the description of the land is clear and satisfactory. Its weight is rather to the contrary. Upon the one side is the testimony of the complainants; on the other, the written instrument, with its separate description of the land leased and to be sold, fortified by the assertion of the defendants that it was

not intended by the parties that the tracts should be identical. In Stockbridge Iron Co. v. Hudson Iron Co., 102 Mass. 48, the court said: 'The writing must be regarded prima facie as a solemn and deliberate admission of both parties as to what the terms of the contract actually were;' and he who asks to have a written contract reformed must make out a perfectly clear case, free from doubt. Hupsch v. Resch, 45 N. J. Eq. 662, 18 Atl. 372; Harrison v. Insurance Co., 30 Fed. 863. It seems that the difference of description was noticed by Mr. Pope when the agreement was sent to West Virginia, where he resided, for execution. No inquiry was made regarding the matter, but it was, he says, assumed that the option covered the same property as that leased. Against mistake due to negligent conduct the court will not relieve. Haggerty v. McCanna. 25 N. J. Eq. 48; Voorhis v. Murphy, 26 N. J. Eq. 435. After the proofs had all been taken, the complainants obtained leave to file an amended or supplementary bill, which, without setting up new matter, asks that the court, if it should find that the complainants were not entitled to a reformation of the description of the lots to be conveyed them by the defendants, so as to conform to the description of the lot leased, that then the complainants 'may be given an opportunity to elect whether they will take the same as described in the option, and, if they do that, the contract may be specifically enforced in the manner admitted by the defendants.' The complainants do not say that they are willing to perform the contract as it has been drawn and executed by them, but ask the court to give them an opportunity to elect whether at this late day they will exercise the option to purchase, which expired in October, 1895, and, if they do so elect, that the court will decree a specific performance. They ask the court to make a decree which would compel the defendants to convey, but leave them at liberty to reject the deed tendered in compliance with the decree. This the court cannot do. The remedy at the time of rendering the decree would not be mutual. In Richards v. Green, 23 N. J. Eq. 536, Chief Justice Beasley says: 'It seems to me that the rule is universal to this extent: that equity will not direct the performance of the terms of an agreement by the one party, when at the time of such order the other party is at liberty to reject the obligations of such agreement.' The tender made by the complainants in the exercise of their option was for the tract of land described in the lease. The defendants offered to convey 'the property described in said agreement in our covenant to convey.' This the complainants refused to accept, saying 'that they would not have anything only what the lease and option called for, the three hundred and fifty feet the building stood on, and the piece fifty by one hundred and seventy-five,' and we told them, said the witness, 'we intended to have all the lease and option called for.' Having thus refused to purchase the land according to the terms of the contract, the court cannot make a new agreement for the parties by extending the time in which they may elect whether they will or will not exercise the option. Henderson v. Stokes. 42 N. J. Eq. 588, 8 Atl. 718. The complainants are not entitled to the relief prayed for in the bill, and it should be dismissed, with costs."

Wm. Wilkins Carr and H. P. Camden, for appellants.

D. J. Pancoast, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BUTLER, District Judge.

BUTLER, District Judge. The decree is fully justified by the opinion of the circuit court; and we adopt it as an expression of our views. We will only say in addition that there is no such evidence of fraud or mistake as would warrant reformation of the contract; it is scarcely pretended that there is. Taking the paper signed by the parties, as it stands, the plaintiffs did not exercise their option to purchase within the time specified, and they are without excuse, tending to relieve them from the consequences. Their attention was

called to the terms of the contract, and their misunderstanding pointed out, in ample time to allow them to take the property described. Instead of taking it they declined to do so. At the time of filing their bill they were unwilling to take it; and still later when amending the bill they had not resolved to take it; and consequently asked further time to consider the subject. Time is of the essence of such contracts. If the plaintiffs had been misled respecting the terms (even without fault of the defendants) until the time for exercising the option had expired, they might, possibly, be excused, and relieved from the consequences; but in view of the facts they certainly cannot.

The decree is affirmed.