FULTON v. COLWELL et al.

(Circuit Court, D. New Jersey. March 4, 1901.)

REFORMATION OF CONTRACT—GROUNDS—MISTAKE.

A written contract made after long negotiation, and the terms of which, after it was written, were fully considered and discussed before it was signed, cannot be reformed by a court of equity, in the absence of fraud, to express an intent different from that which its language imports, unless it is clearly shown to have been the intent of both parties, and that the mistake was mutual.

In Equity. Suit for reformation of contract.

R. V. Lindabury, for complainant.

D. J. Pancoast, for defendants.

KIRKPATRICK, District Judge. The bill of complaint in this cause alleges that a mutual mistake was made by the parties in the preparation and execution of a certain contract therein set out, in that while it was the intention of the parties that there should be

given to the complainant a mere option to purchase a certain mortgage therein described, without any personal obligation in case he should elect not to take the same, yet some of the words and phrases contained in said agreement seem to indicate a contrary intention. The prayer of the bill is that the contract be reformed so as to clearly express the intention of the parties as above set forth. It appears from the testimony in the case that the defendant Charles R. Colwell was the owner of a tract of land in the county of Atlantic, in the state of New Jersey, and also the owner of a certain bond conditioned to pay the sum of $340,000, which said bond was secured by a mortgage upon another tract of land in said state. This mortgage, however, was not a first lien on the said lands described therein, but subject to the lien of another mortgage given to secure the sum of $150,000, with interest. On the 5th day of July, 1892, an agreement was made and entered into between Elisha Fulton, the complainant, and Charles R. Colwell, the defendant, in regard to the said $340,000 mortgage, in and by which said Fulton agreed to purchase the same at about one-half of its face value, if so much should be realized from sales of the mortgaged premises, and applicable to the payment of said mortgage, with a guaranty on the part of said Fulton that the amount of such sales should not fall short of the sum of $100,000, and which said amount should be paid within 10 years from the date of said agreement. There was also a provision in said agreement that said Fulton should pay the sum of $6,000 per annum in equal monthly installments, being interest on said $100,000, with an adjustment of the amount in case payment of the said sum of $100,000, or any part thereof, should be anticipated. This agreement also provided for releases of parts of the mortgaged premises from time to time, the sale of 2,500 acres of land near Hammonton, N. J., at $6 per acre, and the transfer to Fulton of $400,000 of stock in the Industrial Land Company. It was expressly understood and agreed that the amount to be received by said Colwell for his mortgage should not in any case be less than $100,000 and interest at 6 per cent. per annum, nor more than one-half of the amount secured by said mortgage. The said Colwell was to be protected from all loss or damage of any kind that might arise on account of the first mortgage of $150,000. On the same day, July 5, 1892, it was agreed between the parties that the agreement above recited should be placed in the hands of Samuel Fulton, a brother of the complainant, in escrow, to be delivered and become operative when and as soon as Elisha M. Fulton should have made with the Industrial Land Development Company and its stockholders and Peter Garrahan such arrangements for the control of the stock of said company and the management of its business as would, in his judgment, justify him in taking an interest in or entering upon the management of said company. It was understood, however, that the said E. M. Fulton might, without such arrangement, elect to make said agreement operative, and he might so notify said Charles R. Colwell, and the said Samuel Fulton should be thereupon authorized to deliver the said agreement. On the 18th July, 1892, the following "memo." was made:

"One copy of the within contract delivered by me to C. R. Colwell, with notice that E. M. Fulton elected to proceed with the purchase without waiting for the conclusion of the deal with the land company, and authorized Colwell to employ General Wright and Mr. Abbott to prepare the necessary papers at E. M. Fulton's cost. Said papers to be submitted to Ed. A. Day for approval.                                    S. Fulton."

The agreement of July 5, 1892, above referred to, seems to have been submitted to Mr. Abbott and Mr. Day with the request that each of them should prepare a more formal contract to be executed by the parties, which should bind them to carry out the terms of the agreement of July 5th. Such papers were accordingly prepared, and on the 18th day of August, 1892, they were brought to the office of E. M. Fulton, Jr., in the city of New York, where were present E. M. Fulton, E. M. Fulton, Jr., Samuel Fulton, and Edward A. Day, their attorney, and Samuel R. Colwell. Both of said agreements prepared by Mr. Abbott and Mr. Day were drawn upon the lines of the agreement of July 5, 1892, and provided for the purchase of said mortgage of $340,000 by said Fulton; but, when they were presented to said Fulton for execution, he refused to sign either of them, because he said that he had not understood that he was to be personally bound to pay any specific sum for said mortgage. Colwell was unwilling to accept any agreement which did not provide for the personal obligation of said Fulton to make such payment. As a result, the day was spent in fruitless negotiations. At one stage of the proceedings Fulton, the complainant, authorized his attorney, Mr. Day, to offer Colwell, the defendant, $100,000 in cash for his mortgage. Mr. Day testifies that he accordingly made the offer to Colwell, and urged upon him its acceptance, but Colwell refused. At the close of the business day the parties adjourned to the residence of Mr. Fulton, at Rye, where the negotiations were continued between Mr. Day, representing Fulton, and Colwell personally, so that at a late hour in the night it was announced by Mr. Day that an agreement had been practically reached. There was no statement of its terms. Mr. Day undertook to prepare the papers, and on the morning of the next day did so. The agreement now brought into court is the result.

It is obvious that there can be no question of fraud respecting either the preparation or execution of this contract. It was drawn by Mr. Day, the attorney of the complainant, and was executed in his presence. The testimony shows that the contract was read to and discussed by the parties, paragraph by paragraph. Alterations and additions were made at the suggestion of one or the other of the parties, and the whole as amended approved by both. The certificate of Mr. Day, as a master in chancery, annexed to said agreement, sets forth that, he having first made known to the parties the contents thereof, they and each of them acknowledged that they signed, sealed, and delivered the same as their voluntary act and deed. The contract was fairly made, deliberately entered into by the parties, with full opportunity to become acquainted with its contents. It is a well-settled rule that in the absence of fraud the court cannot make any change in, nor direct the reformation of, a contract, unless the proof be clear that by reason of a mutual mistake the real intention of the

parties has not been expressed (Pope v. Hoopes, 33 C. C. A. 595, 90 Fed. 451), and that the burden of proof to show an intent contrary to that expressed in the agreement rests on the complainant (Harrison v. Insurance Co. [C. C.] 30 Fed. 863). The mistake must have been a mutual one, and the intent which the agreement fails to express must have been the intent of both parties at the time of execution. Not only must the mistake be uncontrovertibly proved, but the party alleging it must be able to show the form to which the agreement should be brought, in order that it may be set right according to what was intended by the parties. Ramsey v. Smith, 32 N. J. Eq. 31. "The rule," says Vice Chancellor Bird in Henderson v. Stokes, 42 N. J. Eq. 586, 8 Atl. 718, "is thus inexorable to save the court from the danger of making contracts for the parties." The only persons present when the agreement was made and executed were the complainant and his counsel and the defendant Charles R. Colwell. The complainant swears he thought he was taking a mere option to purchase the $340,000 mortgage, and incurring no personal liability. The defendant testifies that he considered that he was selling him the same mortgage at a fixed price, which the complainant bound himself to pay. Mr. Day thinks the agreement as drawn expresses the intention of the parties as he understood it; that it practically provides for an option, though the language employed in several instances is not quite what he understood the intention of the parties to be; and he points out that "almost all of the first and second pages of the agreement fails to express an option, but apparently as if it were an absolute sale," and that to the same effect is the clause which provides "that the said party of the first part hereby agrees to sell, assign, and transfer" said mortgage, and also the twelfth clause, binding the parties, their heirs, etc., to the performance of the agreement, and providing for liquidated damages. The last-mentioned clause, Mr. Day says, "was one of Mr. Colwell's clauses,"—"one he particularly insisted upon," to the insertion of which he (Day) assented because he thought it merely provided for a penalty. There is no evidence tending to show that these reasons were made known to Colwell, nor does it appear that Colwell had any reason for "insisting" upon its insertion, other than that the clause seemed to him necessary to express the intention of the parties. The court is not asked to construe the contract, but to reform it so that it may be cleared from all ambiguity, so that it may clearly express the intention of the complainant to take, and the defendant Charles R. Colwell to give, a mere option to purchase said mortgage; and to that end that the court should eliminate all words and phrases, including the twelfth clause, the insertion of which was "insisted" upon by said Colwell and accepted by the complainant, which tend to show a contrary intent. Counsel for complainant was asked, upon cross-examination, to suggest the terms which might have been more suitable to express the agreement between the parties. In reply he says:

"Well, I couldn't take this paper [meaning the agreement] and do that,— work it out. I could dictate another agreement. I should change the whole thing if I were to draw it over again."

To do this is, of course, outside the province of the court. It cannot make a contract for the parties. In this case the parties have themselves carefully and considerately expressed their agreement in writing, and, whatever may be its meaning, the paper must speak for itself. As the case is presented, it is impossible for the court to say that the proof of a mutual mistake is so clear, satisfactory, and free from doubt as to entitle the complainant to the relief prayed for. The bill will be dismissed, with costs.