Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 It is plain that no other equity is asserted in the bill of the complainant than such as grew out of the alleged assignment and power of attorney of August 24th, 1860. There is none arising out of payments made by the complainant in the purchase of the debts and judgments. So far as it is chárged by the bill, every dollar that was paid for the judgments was paid with the defendant’s money, advanced by him to the complainant for the purchase. It is true the allegation is made that all the money over and above the $5000 advanced, that was paid in the purchase of the debts, was furnished by the complainant out of his own resources, but it is
 
 *236
 
 not averred that any more than $5000 in all were paid. It is, therefore, the alleged assignment of August 24th, 1860, alone which is the basis of the complainant’s equity.
 

 That instrument, however, called an assignment, was, at most, but an executory agreement to assign. Construed with the power of attorney made at the same time, it admits of no other construction. The instrument was signed by Hay alone. French, the complainant, did not sign it, and it is not averred that he promised to pay the $5000. Hay undertook only that French should hold the judgments and claims “ upon his payment” of the stipulated consideration, with interest from the date. And the power of attorney given by Hay to French at the same time was an authority to deal With the securities in the name of Hay, and for Hay. The power was worse than useless, if the intention of the parties was that a present ownership of the judgment should be vested in French, without the payment of the agreed price. The utmost effect, therefore, that can be given to these two instruments of August 24th, 1860, upon which alone the complainant must rely, is that they amounted to an offer that if French would pay the $5000 he should be the owner of the judgments. The transmission of the title and the payment of the price were intended to be contemporaneous. If this is so, how long was the defendant under obligation to hold the offer extended ? No time for its acceptance was mentioned. The offer was made in August, 1860. The complainant never accepted it. No^acceptance is averred in his bill. He never paid or tendered the $5000; he never assumed to pay it. He asserted no claim to the judgments until 1868, when he filed this bill. Now, while it is true that in equity time is generally not considered as of the essence of a contract, it is only true when compensation can be made for its lapse, and the rule is inapplicable in case of an offer that requires acceptance to make a contract. In May, 1861, the complainant having given no i»di-“ catiou of acceptance, and having, so far as it appears, asserted no claim to the judgments, abandoned his home, and did not return until 1865. Not until three years after his return
 
 *237
 
 did be commence this action. Was the defendant under obligation to remain inactive and make no efforts to obtain the debts due him, uncertain whether French would ever elect to pay the $5000 and take the judgments? We think not. Nothing in the instruments of August, 1860, imposed such an obligation. To say the least, therefore, it may well be doubted whether the complainant has any right under those instruments that a court of equity will enforce.
 

 And were it conceded that, by the instrument through which he claims, French became the owner of the judgment, as between himself and Hay, we do not perceive how the concession could aid him in this case. If, as the bill avers, Hay collected the judgments and now holds the money for the use of the complainant, there is a complete remedy at law. This is not a bill for discovery, aud the aid of a court of equity is not needed.
 

 But the judgments never were collected. It is not pretended that the judgment debtors ever paid anything, or that French or Lenox, who were sureties for the payment of the debts, ever paid anything. In 1862 the railroad and property of the railroad company was sold under a deed of trust which the company had given prior to any of the judgments, aud Hay became the purchaser. He paid none of the purchase-money with the judgments he held. He could not have paid with those judgments, for his bid was less than the sum due under the deed of trust, aud that sum was prior in right to any of the judgments. Nor is there any attempt to prove that any part of the purchase-money was paid by the judgments. The evidence shows that after Hay purchased, a new company was formed; that a portion of its stock was allotted to him; that he subsequently sold the stock so allotted for a sum greater in amount than the aggregate of the judgments he held agaiust the old company, aud that after the formation of the new company, he caused satisfaction of the judgments to be entered of record. In no other manner than this is it now pretended that the judgments have been collected. The presumption of collection that might arise from the entries of satisfaction, if unex
 
 *238
 
 plained, is rebutted by the proof that all the defendant received was the proceeds of sale of his stock in the new company, by no possibility the fruit of the judgments. And the complainant .cannot claim an interest in that stock or its proceeds, without affirming the trustees’ sale of the railroad,' and the subsequent formation of the new company, followed by the issue of the stock. Such a sale, if valid, would have destroyed the old company, three-quarters of the stock of which the complainant owned. But the sale has been judicially determined to have been invalid, the old company has recovered the property, and the new has been consequently adjudged never to have had a legal existence. The consequence of this is that the complainant now holds his full interest in the old company, unimpaired by any sale. After this it is impossible to see how he can assert that any part of the new stock or its proceeds belonged to him; and if it did not, nothing has been collected for him, even if he can be considered the owner of the judgments. Nor has he been injured by the entries of satisfaction, for if he became the owner of the judgments by force of the instruments of August 24th, 1860, as he avers, he is the owner still,, notwithstanding the entries of satisfaction, for no one but the owner could cause valid acknowledgments of satisfaction to be made. For these reasons the decree must be
 

 Affirmed.