AMERICAN TRUCKING ASS'NS, Inc., v. UNITED STATES et al.

No. 62919.

District Court of the United States for the District of Columbia.

Nov. 24, 1936.

E. S. Brashears, J. ·Ninian Beall, and Harry C. Ames, all of Washington, D. C., for plaintiff.

Daniel W. Knowlton, of Washington, D. C., for Interstate Commerce Commission.

Littlepage & Littlepage and ·Hamilton & Hamilton, all of Washington, D. C., for Baltimore & O. R. Co.

McKenney, Flannery & Craighill, of Washington, D. C., for Pennsylvania R. R. and others.

Before GRONER, J., United States Court of Appeals for the District of Columbia, and WHEAT, C. J., and BAILEY, J.

GRONER, J.:

For more than 50 years some of the railroads in certain sections of the country were engaged in what is known as pick-up and delivery ·service in connection with the transportation by rail of merchandise traffic. The service, however, was neither continuous nor universal, but in those instances in which it existed, the Interstate Commerce Commission had uniformly held that it had jurisdiction to regulate it as part of the·transportation service by railroad.[1] In 1932 the New England lines, with the exception of the New Haven and the Boston & Albany, established a regular pick-up and delivery service. The arrangement provided for the service at the regular station to station rates in connection with line hauls of 260 miles or less. For longer hauls there was an additional charge graded upward to a maximum of 10 cents per hundred pounds. In the same year the Pennsylvania experimentally established the service on certain of its lines, and the practice was followed by a number of other carriers. In 1936 the Eastern railroads having pick-up and delivery service filed new tariffs, reducing the rates, effective April 1, 1936. All other Eastern railroads on which the service had not previously been established contemporaneously proposed to establish a like service at the same rates and filed tariffs accordingly. The Commission at the instance of motor carriers suspended the operation of the tariffs until November 1, 1936, and of its own motion instituted a proceeding of investigation and inquiry concerning the proposed tariff schedules. The Commission then conducted an

[1] Casassa v. Pa. R. Co., 24 I.C.C. 629; Washington, D.C., Store-Door Delivery, 27 I.C.C. 347; Merchants & Manufacturers Ass'n v. Baltimore & Ohio R. Co., 30 I.C.C. 388; Tariffs Embracing Motor-Truck or Wagon Transfer Service, 91 I.C.C. 539; Motor Bus and Motor Truck Corp., 140 I.C.C. 685; Transfer in St. Louis & East St. Louis by Dray and Truck, 155 I.C.C. 129; Constructive and Off-Track Freight Stations, 156 I.C.C. 205; Rules Covering Freight at Bennettsville, S.C., 157 I.C.C. 277; Coordination of Motor Transportation, 182 I.C.C. 263; Trucking L. C. L. Freight in Lieu of Rail Service, 185 I.C.C. 71; Off-Track Stations in St. Louis, 186 I.C.C. 578.

exhaustive investigation, in which the plaintiff and others similarly interested were allowed to intervene and take part, and on October 13, 1936, entered an order to the effect that the rates proposed in the tariffs were too low and that the service should not be rendered at a rate less than 45 cents per one hundred pounds (an increase of 15 cents over the previously published tariffs). The railroads then filed supplementary tariffs effective November 16, 1936, complying with the order of the Commission. Plaintiff thereupon filed its bill of complaint, the purpose of which is to set aside and declare of no effect the two orders of the Interstate Commerce Commission just above referred to (Docket 4191 and Docket 27425), and to have this court enjoin pendente lite the railroad companies from acting either under the orders of the Commission or under their respective tariff schedules in putting the system into effect without first obtaining a certificate of public convenience and necessity as required in part 2 of the Interstate Commerce Act (Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.).

The question now for decision is whether a proper case has been shown for an interlocutory injunction.

Putting to one side for the time being the question whether plaintiff has any standing to maintain the suit and likewise whether the orders of the Interstate Commerce Commission are of a character which we may vacate and set aside, we are of opinion that there is no merit in plaintiff's contention that the Interstate Commerce Commission is without jurisdiction or authority to make effective the proposed tariffs without precedent issuance by the Commission of certificates of public convenience and necessity. Or, stated otherwise, we are of opinion that neither section 206(a) nor section 203(a) (14) of part 2 of the Interstate Commerce Act (49 U.S.C.A. §§ 303(a) (14), 306(a), is applicable to the defendant railroads in relation to the character of service sought to be enjoined.

Section 206(a) provides as follows: "No common carrier by motor vehicle subject to the provisions of this part [chapter] shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations."

Section 203(a) (14) provides: "The term 'common carrier by motor vehicle' means any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public in interstate or foreign commerce by motor vehicle for compensation, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail or water, and of express or forwarding companies, except to the extent that these operations are subject to the provisions of Part I [chapter 1 of this title]."

As we have pointed out, the Commission over a period of many years, indeed since 1912, has held that railroad operation of pick-up and delivery service by motortruck is a transportation service subject to the jurisdiction of the Commission under the provisions of the Interstate Commerce Law now known as part 1 of that act (49 U.S.C.A. § 1 et· seq.). We think this has also been the holding of the courts in those cases in which the question has arisen. [2] We are, therefore, in full agreement with the statement of the Commission that in adding the proviso in section 203(a) (14)—except to the extent that these .operations are subject to the provisions of part 1—"Congress may be presumed to have legislated with knowledge of the court decisions previously mentioned, holding that pick-up and delivery service is within the meaning of 'transportation' as defined in section 1(3) of the Interstate Commerce Act [49 U.S.C.A. § 1(3)] as well as with knowledge of our own administrative findings to the effect that, while railroad terminal service by motortruck was subject to regulation under the Interstate Commerce Act, the use of motortrucks by railroads in line-haul service was not subject to that act." And therefore we think that in the exception

[2] N. Y. Dock Ry. v. P. R. R. Co. (D. C.) 1 F.Supp. 20; Id. (C.C.A.) 62 F. (2d) 1010 (directly); Merchant Truckmen's Bureau v. Reardon (D.C.) 10 F. Supp. 358; Central Trans. Co. v. Terminal R. R., 288 U.S. 469, 53 S.Ct. 444, 77 L.Ed. 899 (by inference).

Congress intended to *include* under the provisions of part 2 intercity motor vehicle operations of railroads but at the same time to *exclude,* from that part, motor vehicle operations within terminal districts.

Plaintiff insists that this construction of the proviso is wrong because, even granting the decisions of the Commission and of the courts do hold that pick-up and delivery service is subject to part 1 of the act, because such service constitutes "terminal facilities and transportation," the courts and the Commission have also held that this particular service is not subject to the provisions of section 1 (18) of part 1 of the act (49 U.S.C.A. § 1(18), which requires a carrier seeking to extend its line of railroad to obtain a certificate of convenience and necessity—and hence that by the use of the words "to the extent that these operations are subject to the provisions of Part I [chapter 1 of this title]" Congress meant that, to the extent that the operations are not subject to the provisions of part 1, they are included in and covered by the provisions of section 206(a) of part 2 (49 U.S.C.A. § 306(a). In other words that, since the courts and the Commission have held railroad operation of motor truck terminal service subject to part 1 of the act only to the extent that it constitutes terminal facilities and transportation and have also held it is not subject to the provisions of section 1(18) of part 1 of the act requiring a certificate of public convenience, it is therefore to that extent not subject to the provisions of part 1, from which it follows that the exception in section 203(a) (14) is not applicable. But we are unable to follow this argument or agree in the conclusion.

■■ As we have seen, the Commission has repeatedly held that, under the provisions of the original Interstate Commerce Act (part 1), it has jurisdiction over railroad operation of terminal motor truck services as constituting terminal facilities within the meaning of section 1(3) of the act, but that it had no jurisdiction of line-haul motortruck operation by railroads—because the same did not constitute terminal facilities. [3] It is therefore perfectly plain that at the passage of the act of 1935 Congress had notice that there were two kinds of railroad motor vehicle operations: One, in terminal districts as a part of the service of transportation; and the other, in what is commonly known as line-haul or over the road service, that is to say, from one city or town to another. As to the first, the Commission had consistently asserted jurisdiction under the provisions of the original Interstate Commerce Act, but, as to the second, it had held that the use of motor trucks in line-haul or over the road service was not subject to its jurisdiction. In these circumstances the unmistakable purpose of Congress, as we think, in the use of the language in section 203(a) (14) was to supply the missing jurisdiction as to motor line-haul service by railroads, and to require in such cases a certificate of public convenience and necessity—but to do no more. The reason for this is plain when it is considered that for many years the terminal service had been held a part of the transportation service of the carriers as to which jurisdiction was complete; whereas intercity service was a wholly new adventure. In this view we are of opinion that the correct interpretation of section 203(a) (14) is that every interstate common carrier by motor vehicle, including carriers by rail or water, shall first obtain a certificate of public convenience and necessity—except to the extent that such motor vehicle transportation was then subject to the jurisdiction of the Commission under the original act. This interpretation finds support in the legislative history of the more recent act for, as is pointed out by the Commission in its opinion, Senator Wheeler, chairman of the committee having the bill in charge, said in explanation of the particular clause we are discussing: "The term 'common carrier by motor vehicle' includes both regular and irregular route operators and embraces the motor vehicle operations of rail, water, express, and forwarding companies except to the extent that these operations are subject to the provisions of Part 1." [4]

---

[3] Tariffs Embracing Motor-Truck or Wagon Transfer Service, 91 I.C.C. 539, 546; Motor Bus and Motor Truck Corp., 140 I.C.C. 685, 729; Coordination of Motor Transportation, 182 I.C.C. 263, 367; Trucking L. C. L. Freight in Lieu of Rail Service, 185 I.C.C. 71, 72.

[4] 79 Cong.Record, 5651.

II. The validity of the orders of the Commission is also attacked on the ground that the allowances which the railroads make to the consignors and consignees who themselves perform the pickup and delivery service are rebates and unlawful. The tariffs provide for an allowance of 5 cents per hundred pounds when the consignor or consignee performs the service at his own expense. But it is perfectly clear that this allowance is not a rebate as that word is used in the act. It is, as we have seen, provided for in the published tariffs, and there is nothing either unlawful or unreasonable in permitting a shipper or consignee, where he himself performs a part of the transportation service, to receive a reasonable compensation or allowance therefor. This is clearly indicated by the Supreme Court in United States v. Baltimore & Ohio, 231 U. S. 274, 34 S.Ct. 75, 58 L.Ed. 218, where it is said that a railroad may compensate a shipper for services rendered and facilities furnished in connection with his own shipment.

III. Still another point urged is that the railroads should not be permitted to establish rates on the "added traffic theory" of rate making. This contention involves à theory of rate making, as to which the authority of the Commission is paramount; and, unless the result is clearly wrong, is not subject to court review. On this motion the evidence considered by the Commission is not before us, and there is nothing by which we can make a fair comparison. And, even if it should appear that the rates published in the tariffs do not fully compensate for the services proposed, it must also be remembered that the Commission has, after a thorough investigation, increased the rates from 30 cents per hundred pounds to 45 cents per hundred pounds. In the absence of a showing that this is clearly unreasonable, it would be highly improper for this court to substitute its judgment—even if it had anything before it on which to form a judgment—for that of the Commission. Therefore, without at this time and on this motion passing upon the question whether plaintiff has any standing to maintain the suit, we are of opinion that the motion for interlocutory injunction should be denied. A decree in accordance with this opinion will be entered on presentation, and the parties may submit proposed findings.