## ANDERSON v. BIGELOW.

### No. 9886.

Circuit Court of Appeals, Ninth Circuit.

July 23, 1942.

As Modified on Denial of Rehearing
Aug. 25, 1942.

Lloyd V. Smith and John S. Field, of Reno, Nev., for appellant.

Duncan A. McLeod, of San Francisco, Cal., and Walter Rowson, of Reno, Nev., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, individually and as president and business agent of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local #533 of Reno, Nevada, (hereinafter called the Union,) appeals from a decree enjoining appellant and the Union from interfering with the business of the Virginia & Truckee Railway, engaged in interstate carriage by truck, (hereinafter called the Carrier,) "and/or" Virginia-Truckee Transit Company,[1] both being corporations in receivership in the district court, "by boycotting and/or by partolling and/or picketing and/or loitering in the streets, roads, highways, or in front of the places of business of said corporations in receivership, or either of them."

The evidence shows that the Union's members were drivers of trucks. The receiver of the Carrier was engaged in interstate transport of merchandise by two separate methods. One was by rail and the other by motor carriers on the highways of Nevada. There is no evidence and no finding of the district court that the motor carriage of the corporation was in any way connected with its rail carriage. Obviously, the receiver's truck carriage does not become connected with his rail carriage because the word "Railway" appears in the title of the Carrier corporation. Neither evidence nor finding showed that the Carrier's trucks even operated in such a "pickup" function for and incidental to the rail carriage as was considered in Circuit Judge Groner's opinion in American Trucking Ass'ns v. United States, D.C., 17 F.Supp. 655.

The receiver's description of this separate line highway interstate trucking ap-

---

[1] The Transit Company had ceased its trucking carriage prior to the filing of the petition for injunction in the district court.

pears in the footnote.[2] The "pick up" truck there listed, serves the over the highway trucking. It was not proved or contended that it also served the railroad traffic of the receiver.

The appellant, acting on behalf of the Union, presented to the receiver two proposed written contracts, one respecting terms of employment of the motor operating employees of the receiver, and the other respecting wages. There were some weeks of delay by the receiver and finally, as the court found on supporting evidence, the appellant notified the receiver that unless the contracts were accepted by him by a certain day his Union would cause a strike, a picketing and a boycott against the business conducted by the receiver. There was no evidence and no finding that any violence against any men or property was threatened. The receiver petitioned the district court and injunctions, preliminary and pendente lite, were ordered, followed by the decree appealed from.

The district court held that so far as concerns labor disputes of the truck drivers and their Union with the receiver they are controlled by the Railway Labor Act, 45 U.S.C.A. § 155, 44 Stat. 580.

There is no question that the injunctive decree is valid if the Railway Labor Act controls, for none of the requirements which are conditions precedent to the right of rail carrier employees to strike were satisfied.

The district court, In re Virginia & Truckee Ry., 36 F.Supp. 119, 121, arrived at its conclusion that the Railway Labor Act is applicable in the following language:

"The 'Motor Carrier Act,' Title 49 U.S. C.A., Chapter 8, § 301 et seq., deals with motor carriers engaged in interstate commerce 'including such motor vehicle operations of carriers by rail or water, and of express or forwarding companies, except to the extent that these operations are subject to the provisions of chapter 1 of this title.' Tit. 49 U.S.C.A. § 303(a) (14), § 313(b). Chapter 1, so referred to, is the 'Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.' American Trucking Ass'ns v. United States, D.C., 17 F.Supp. 655. By the provisions of this Act, the Interstate Commerce Commission has conferred upon it the powers and duties: 'To regulate common carriers by motor vehicle * * * qualifications and maximum hours of service of employees, and safety of operation and equipment.' 49 U.S.C.A. § 304(a) (1). United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345."[3]

We are unable to follow the district court's reasoning based on this extract from section 303(a) (14) of the Motor Carrier's Act, 49 U.S.C.A. 301 et seq. The sentence from which the extracted phrase is taken is the definition of the term "common carrier by motor vehicle," and reads as follows:

"The term 'common carrier by motor vehicle' means any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public in interstate or foreign commerce by motor vehicle for compensation, whether over

---

[2] "That since September 21, 1939 the Railway Co. operated an over-the-highway service in handling freight, and in this service handled practically all classes of freight less than carload lots; that at present the operations of the over-the-highway service is—
"One truck that operates between Reno and Virginia City, leaving Reno in the morning and returning in the afternoon;
"Another truck that operates between Reno and Carson City, leaving Reno in the morning and returning in the afternoon;
"Another truck that leaves Gardnerville in the morning for Reno and returns in the afternoon;
"A pick-up truck that takes care of pick-ups in Reno.
"Together with what are called the light trucks;

"That they also have a standby truck that is used in case of emergency for extra work.
"That in connection with the over-the-highway service of the Railway Co., they had 16 or 17 employees, there being 4 regular and 1 extra truck drivers, 4 agents, a helper, and 5 employees in the auditing force; that these employees were all carried on the payroll of the Railway Co.; * * *."

[3] Nothing in the case of United States v. American Trucking Ass'ns, supra, cited by the district court even suggest that line trucking is subject to the Railway Labor Act. The contrary inference seems logically necessary. This case is not an appeal from 17 F.Supp. 655, but from 31 F.Supp. 35.

462

regular or irregular routes, including such motor vehicle operations of carriers by rail or water, and of express or forwarding companies, except to the extent that these operations are subject to the provisions of part I." 49 Stat. 544 § 203(a) (14), 49 U.S.C.A. 303(a) (14).

None of the "motor vehicle operations of carriers by rail or water, and of express or forwarding companies" "are subject to the provisions of part I," except the terminal pick-up service incidental to rail carriage. The Interstate Commerce Commission draws the distinction between truck line haul and pick-up trucking for a rail haul. As was stated in Judge Groner's opinion in a three judge district court decision, "We are, therefore, in full agreement with the statement of the Commission that in adding the proviso in section 203(a) (14)— except to the extent that these operations are subject to the provisions of part 1— 'Congress may be presumed to have legislated with knowledge of the court decisions previously mentioned, holding that pick-up and delivery service is within the meaning of "transportation" as defined in section 1 (3) of the Interstate Commerce Act (49 U.S.C.A. § 1(3) ) as well as with knowledge of our own administrative findings to the effect that while railroad terminal service by motortruck was subject to regulation under the Interstate Commerce Act, the use of motortrucks by railroads in line-haul service was not subject to that act.'" American Trucking Ass'ns v. United States, D.C., 17 F.Supp. 655, 657.

Here, as stated above, no evidence was introduced to support the burden of proof of appellee, petitioner below, that any of the truckmen enjoined were engaged in any service, terminal pick-up or otherwise, incidental to rail traffic. The defendants were employed by a "common carrier by motor vehicle" on the "highways" of Nevada.[4]

They are hence governed by the Motor Carriers Act,[5] though their employer is a receiver.[6]

That is to say, that so far as concerns the general regulations applying to the receiver's truck drivers, he was under the control of the Interstate Commerce Commission and not of the district court.

The district court did not rely on any contention that the Norris-LaGuardia Act does not apply where employers, other than carriers under the Railway Labor Act, have brought or had their companies brought into a federal receivership and transferred the employer status to a receiver. Nor is there any contention that the Norris-LaGuardia Act would not prevent an injunction against the employees because of violence or any other of the exceptions of the Act.

However, it has been suggested elsewhere that employers can escape the provisions against enjoining peaceful striking or picketing if their enterprises can be brought within a federal receivership. We can find no case supporting such an interpretation of the Norris-LaGuardia Act. It prohibits injunctions "in *any* case involving or growing out of *any* labor dispute."[7] It provides that "*No* court of the United States shall have jurisdiction to issue"[8] such injunctions.

There is no exception of "any case" or "any labor dispute" in receivership proceedings. It applies to the injunctions of every court. Its more recently enacted particular provisions control and limit the prior general power of federal courts to issue injunctions of Section 262 of the Judicial Code, 28 U.S.C.A. 377.

[4] "(12) The term 'highway' means the roads, highways, streets, and ways in any State." 49 U.S.C.A. 303 (a) (12).

"(13) The term 'motor vehicle' means any vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Commission, but does not include any vehicle, locomotive, or car operated exclusively on a rail or rails." 52 Stat. 1237, 303 (a) (13).

[5] "(a) The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provisions of facilities therefor, is hereby vested in the Interstate Commerce Commission." 49 U.S.C.A. 302(a).

[6] "(1) The term 'person' means any individual, firm, copartnership, corporation, company, association, or joint-stock association; and **includes** any trustee, **receiver**, assignee, or personal representative **thereof**." (Emphasis supplied.) 49 Stat. part 2, 544, 49 U.S.C.A. § 303 (a) (1).

[7] 29 U.S.C.A. § 104, 47 Stat. 70.

[8] 29 U.S.C.A. § 107, 47 Stat. 71.

The Norris-LaGuardia Act was passed seven years after the Railway Labor Act, recognizing an *existing* right to strike by employees of railroad receivers,[9] if its arbitral provisions have failed to produce an agreement. It was followed in 1935 by the Motor Carriers Act, also, as shown above, recognizing receiver employees as within its provisions.

Apart from the clear provisions of the Norris-LaGuardia Act, we see no reason why Congress should deprive the federal courts of the right of enjoining striking and picketing in industrial disputes, where the enterprise is brought before the court for its general equity protection and should allow the injunction where the enterprise already has been brought there for equitable relief with regard to the company's creditors. In the latter case it is nonetheless an industrial dispute. The receiver's truckmen are engaged in an interstate industry and the community as a whole is as much benefited by the freedom of labor to organize effectively for collective bargaining[10] for better wages or elimination of grievances in dealing with an employing receiver as any other employer. Cf. United States v. Hutcheson, 312 U.S. 219, 235, 61 S.Ct. 463, 85 L.Ed. 788.

Certainly the history of federal injunctions does not warrant the inference that Congress regarded federal receivers to be *less* potent to resist employee bargaining pressure than are the owners of the enterprises. A receiver's employee may ask for higher wages or shorter hours and resign if he does not obtain them. There seems no reason why several of them may not agree to do so, that is to strike. Having struck

it is proper to appeal for public support against claimed unfairness of the receiver, just as against unfair treatment of any employer,—that is, to picket and ask the public not to patronize one who is unfair.

The Supreme Court has held that such a labor leader as Mr. Harry Bridges may publicly claim unfair treatment by a decision of a court rendered in a labor dispute, as an exercise of his constitutional right of free speech. Bridges v. State of California, 314 U.S. 252, 278, 62 S.Ct. 190, 86 L.Ed. 192. The receiver here is no more immune from a public statement of a claimed act of unfair treatment of his employees than was the court sentencing Bridges. True, a strike may stop the running of the trucks, but this is no more an inconvenience to the public with the trucking in receivership than in private operation.

The judgment is reversed. The district court was deprived of jurisdiction to issue the injunction by the Norris-LaGuardia Act and is ordered to dismiss the receiver's petition.

Reversed.

MATHEWS, Circuit Judge (dissenting).

This appeal is from a judgment in favor of appellee and against appellants.[1] Appellee is receiver of two Nevada corporations—Virginia & Truckee Railway and Virginia-Truckee Transit Company. Appellants are (1) International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, hereafter called the brotherhood, (2) Local Union No. 533 of Reno, Nevada, hereafter called the union,[2] and (3) H. A. Anderson.[3] The judgment enjoins appellants:

---

[9] "The term 'carrier' includes any express company, sleeping-car company, and any carrier by railroad, subject to the Interstate Commerce Act, including all floating equipment such as boats, barges, tugs, bridges and ferries; and other transportation facilities used by or operated in connection with any such carrier by railroad, **and any receiver** or any other individual or **body, judicial** or **otherwise,** when in the possession of the business of **employers** or **carriers** covered by this Act: * * *." 44 Stat. 577, 45 U.S.C.A. § 151. (Emphasis supplied.)

[10] 29 U.S.C.A. 102, 47 Stat. 70.

[1] In the court below, appellee was called *petitioner* and appellants were called *defendants.*

[2] The union and the brotherhood are distinct entities. The union is affiliated with the brotherhood, but it is not the brotherhood, nor is the brotherhood the union.

[3] In Anderson's answer, in the trial court's opinion, in the findings and judgment, in Anderson's appeal bond, in appellants' statement of points, and in the briefs of appellants and appellee, Anderson is described as "president and business agent of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local No. 533." Whether this means that Anderson is president and business agent of the brotherhood or of the union or of both the brotherhood and the union is not very clear. It probably means that he is president and business agent of the union.

"(a) From interfering with or causing interference with the business of the Virginia & Truckee Railway and/or Virginia-Truckee Transit Company, or from interfering with or causing interference with the employees or premises or property or business of either of said corporations in receivership by boycotting and/or by patrolling and/or picketing and/or loitering in the streets, roads, highways, or in front of the places of business of said corporations in receivership, or either of them, or wherever any of the property of said corporations in receivership, or either of them may be, and/or the streets, avenues, highways or approaches to said places of business or the premises or the property of said corporations in receivership or either of them.

"(b) From interfering with or harassing or obstructing or causing such interference, harassing or obstructing said receiver or his employees or patrons in the conduct of the business of both or either of said corporations in receivership in any manner or in any place or by any means whatsoever."

The judgment contains the following declaration: "That all of the operations of the receiver, petitioner herein, in and about the conduct of the general trucking business of the above named Virginia and Truckee Railway Company[4] are within the provisions of and are governed by the Federal Motor Carriers Act[5] and the Railway Labor Act[6] and that no part or portion thereof come within the provisions of or are governed by the National Labor Relations Act[7] or the Norris-LaGuardia Act."[8]

As this was not a declaratory judgment proceeding, the above quoted declaration, right or wrong, should not have been made a part of the judgment. Its proper place, if any, was in the trial court's opinion. The judgment should be modified by striking out the declaration and, as thus modified, should be affirmed. Such affirmance should be upon the following grounds:

Appellee was appointed receiver of the above named corporations by the court below—the District Court of the United States for the District of Nevada—and thus became an officer of that court. Milwaukee & Minnesota Railroad Co. v. Soutter, 2 Wall. 510, 519, 17 L.Ed. 900; Stuart v. Boulware, 133 U.S. 78, 81, 10 S.Ct. 242, 33 L.Ed. 568; Union Bank of Chicago v. Kansas City Bank, 136 U.S. 223, 236, 10 S.Ct. 1013, 34 L. Ed. 341; Thompson v. Phenix Ins. Co., 136 U.S. 287, 297, 10 S.Ct. 1019, 34 L.Ed. 408; Taylor v. Sternberg, 293 U.S. 470, 472, 55 S.Ct. 260, 79 L.Ed. 599. As such officer, appellee at all pertinent times had possession of the property and conducted the business of the corporations. Such possession, however, was not in a legal sense appellee's possession, but was that of the court. Thompson v. Phenix Ins. Co., supra; Taylor v. Sternberg, supra. So, too, the business which appellee conducted was, in legal effect, conducted by the court.

That the court had jurisdiction to appoint appellee as its officer (receiver) and, by such officer, take possession of the property and conduct the business of the corporations, as it did, is conceded. Thus, when appellants demanded that appellee sign proposed agreements (Exhibits A and B)[9] and threatened that, unless he did so, they would cause the business to be boycotted and would cause the property and places where the business was conducted to be picketed,[10] they, in effect, threatened to interfere with the court in the exercise of its jurisdiction. To prevent such interference, the court was empowered to issue any appropriate writ (Judicial Code § 262, 28 U.S.C.A. § 377),[11] including, of

---

[4] Meaning, evidently, Virginia & Truckee Railway, one of the corporations of which appellee is receiver.

[5] Meaning, evidently, part II of the Interstate Commerce Act, 49 U.S.C.A. §§ 301–327, which, prior to its amendment by the Act of September 18, 1940, c. 722, title 1, §§ 1–27, 54 Stat. 899, 919–929, was entitled "Motor Carrier Act, 1935." See 49 Stat. 543.

[6] 45 U.S.C.A. §§ 151–188.

[7] 29 U.S.C.A. §§ 151–166.

[8] 29 U.S.C.A. §§ 101–115.

[9] Exhibit A was a proposed agreement between the brotherhood and appellee.

Exhibit B was a proposed agreement between the brotherhood and the union and appellee.

[10] Anderson denied that such a threat was made, but the court found that it was made, and the finding is amply supported by evidence.

[11] "The Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

course, the writ of injunction. Davis v. Gray, 16 Wall. 203, 219, 21 L.Ed. 447; In re Tyler, 149 U.S. 164, 181-191, 13 S.Ct. 785, 37 L.Ed. 689; Arthur v. Oakes, 7 Cir., 63 F. 310, 321-326, 25 L.R.A. 414; Lake Shore & M. S. R. Co. v. Felton, 6 Cir., 103 F. 227; City of Shelbyville v. Glover, 6 Cir., 184 F. 234; Gas & Electric Securities Co. v. Manhattan & Queens Traction Corp., 2 Cir., 266 F. 625; Bethke v. Grayburg Oil Co., 5 Cir., 89 F.2d 536, 538.

Section 262 of the Judicial Code has not been repealed, in whole or in part. The power thereby conferred to issue an injunction when necessary for the exercise of the court's jurisdiction is not impaired, diminished or in any wise affected by § 7 of the Norris-LaGuardia Act, 29 U.S.C.A. § 107,[12] or by any other enactment.

The argument that § 7 of the Norris-LaGuardia Act prohibits the issuance of an injunction in a case involving or growing out of a labor dispute, even when such injunction is necessary for the exercise of the court's jurisdiction, is similar to the argument—often made and as often rejected—that § 265 of the Judicial Code, 28 U.S.C.A. § 379,[13] prohibits the issuance of an injunction to stay proceedings in a State court, even when such injunction is necessary for the exercise of the jurisdiction of a Federal court. Cases rejecting the last mentioned argument are cited in the margin.[14] These cases persuade me that appellants' argument respecting the Norris-LaGuardia Act should also be rejected.

Rehearing denied. MATHEWS, Circuit Judge, dissenting.

---

[12] "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, * * * [with specified exceptions]."

[13] "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

[14] French v. Hay, 22 Wall. 231, 250-253, 22 L.Ed. 799; Dietzsch v. Huidekoper, 103 U.S. 494, 26 L.Ed. 497; Julian v. Central Trust Co., 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629; Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 245, 25 S.Ct. 251, 49 L.Ed. 462; Riverdale Cotton Mills v. Alabama & Georgia Mfg. Co., 198 U.S. 188, 194–197, 25 S.Ct. 629, 49 L.Ed. 1008; Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 291, 292, 26 S.Ct. 252, 50 L.Ed. 477; Chesapeake & Ohio R. Co. v. McCabe, 213 U.S. 207, 219, 29 S.Ct. 430, 53 L.Ed. 765; Looney v. Eastern Texas R. Co., 247 U.S. 214, 221, 38 S. Ct. 460, 62 L.Ed. 1084; Wells Fargo & Co. v. Taylor, 254 U.S. 175, 182–184, 41 S.Ct. 93, 65 L.Ed. 205; Kline v. Burke Construction Co., 260 U.S. 226, 228, 229, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Smith v. Apple, 264 U.S. 274, 278, 279, 44 S.Ct. 311, 68 L.Ed. 678; Sovereign Camp v. O'Neill, 266 U.S. 292, 298, 45 S.Ct. 49, 69 L.Ed. 293; Toucey v. New York Life Ins. Co., 314 U.S. 118, 133, 62 S.Ct. 139, 86 L.Ed. 100.