### GAMBILL et ux. v. SNOW et ux.
#### No. 2511.

Court of Civil Appeals of Texas. Eastland.

June 1, 1945.

Rehearing Denied July 20, 1945.

Coombes & Andrews, of Stamford, and McDonald & Anderson, of Wichita Falls, for appellants.

Scarborough, Yates & Scarborough, of Abilene, for appellees.

GRISSOM, Justice.

Plaintiffs, Gambill and wife, sought a judgment against defendants, Snow and wife, for specific performance of a written contract, wherein Gambill was granted an option to purchase certain lots in Abilene from Snow. The cause was submitted to a jury on special issues, which issues and the answers thereto were as follows:

"(1) Do you find from a preponderance of the evidence that the Plaintiff, R. H. Gambill, was ready, able and willing to pay to Defendant W. R. Snow, on January 15th, 1942, the sum of $10,000.00 plus interest and expenses?

"Answer: No.

"(2) Do you find from a preponderance of the evidence that on January 15th, 1942, the Plaintiff, R. H. Gambill, tendered to the Defendant W. R. Snow, the sum of $10,000.00, plus interest and expenses?

"(3) Do you find from a preponderance of the evidence that, on January 15th, 1942, the Defendant, W. R. Snow, refused to accept from the plaintiff, R. H. Gambill, the payment of $10,000.00 plus interest and expenses, and to execute to said Gambill, a deed conveying the property in question, to R. H. Gambill, free of all liens and encumbrances?

"(4) Do you find from a preponderance of the evidence, that after January 15th, 1942, the Defendant, W. R. Snow, consented to an extension of time within which the plaintiff R. H. Gambill, might pay to the Defendant, W. R. Snow, the sum of $10,000.00 plus interest and expenses?

"Answer: Yes.

"(5) Do you find from a preponderance of the evidence that, within a reasonable time after January 15th, 1942, the Plaintiff R. H. Gambill was ready, able and willing to pay to Defendant, W. R. Snow, the sum of $10,000.00 plus interest and expenses?

"Answer: No.

"(6) Do you find from a preponderance of the evidence that within a reasonable time after January 15th, 1942, the plaintiff R. H. Gambill tendered to the Defendant, W. R. Snow, the sum of $10,000.00 plus interest and expenses?

"(7) Do you find from a preponderance of the evidence that the Defendant W. R. Snow, refused to accept from plaintiff R. H. Gambill, the payment of $10,000.00 plus interest and expenses, and to execute to said Gambill a deed conveying the property in question to the said Gambill, free of all liens and encumbrances?"

Only Issues 1, 4 and 5 were answered. The other issues were conditionally submitted and no answer to them was called for after Issues 1, 4 and 5 were answered as shown. Plaintiffs did not object to the conditional submission of said unanswered issues. They thereby waived

the right to complain on appeal of the lack of a finding on such unanswered issues. A A A Air Conditioning & Mfg. Corp. of Texas v. Barr, Tex.Civ.App., 186 S.W.2d 825, 826.

The court rendered judgment on the verdict for defendants. Plaintiffs have appealed. The parties will be referred to as they appeared in the trial court.

It is undisputed that prior to May, 1934, R. H. Gambill owned the property in controversy; that at said time he executed to the Home Owners Loan Corporation a lien on said property to secure the payment of a debt for more than $10,000; that the debt was not paid, the Corporation foreclosed, and on April 1, 1941, Home Owners Loan Corporation became the owner of said property. On December 26, 1941, HOLC conveyed said property to Snow, in compliance with their contract of November 20, 1941, for a consideration of $10,000. On December 24, 1941, Snow and Gambill entered into a contract in which Dr. Snow gave Mr. Gambill an option to purchase the land in controversy. Said contract, omitting its formal parts, is as follows:

"The said W. R. Snow is paying the said HOLC $10,000.00 as set out and shown by contract of agreement made and entered into by the said W. R. Snow and the said HOLC. The said W. R. Snow has placed in escrow with said contract and agreement the sum of $500.00 as forfeit; and

"Whereas, after the contract and agreement aforesaid was made and executed by the said W. R. Snow and HOLC and placed in escrow and also the forfeit money, there arose some objections to the title by Roy L. Duke, attorney for W. R. Snow, in which the said Roy L. Duke required some kind of a deed of acquittance to be executed by R. H. Gambill and wife to said property to the said W. R. Snow and afterwards contract was made with the said R. H. Gambill and wife and said R. H. Gambill desires to repurchase said property and if he could not do so that he would execute a quit claim deed to the said W. R. Snow to cure the defect claimed in the title by the said attorney, Roy L. Duke, for the consideration of the said W. R. Snow paying to the said Gambill and wife the sum of $200.00. But, it is agreed and hereby stipulated that the said R. H. Gambill and wife shall have until the 15th day of January, 1942, in which to pay W. R. Snow the sum of $10,000.00 and interest that may accrue on the note executed by the said W. R.

Snow to the HOLC as a part of the consideration in his purchase of said property from HOLC under said contract of agreement and interest to be paid by W. R. Snow to the HOLC in the purchase of said property.

"It being understood and agreed that the said W. R. Snow is giving the said R. H. Gambill and wife the opportunity to repurchase said property because of the desire of the said R. H. Gambill and wife to repurchase their old home place and the said W. R. Snow in kindness to them has agreed that they may repurchase the same by paying the consideration to him as aforesaid together with the expenses as aforesaid. It being understood that there may, be some other small expense of recording instruments, revenue stamps, etc. that the said W. R. Snow will be out in the consummation of the deal between him and the HOLC and that the said R. H. Gambill and wife will reimburse the said W. R. Snow in the event he shall purchase the said property from the said W. R. Snow on or before January 15, 1942.

"The said R. H. Gambill and wife have this day executed with this instrument quit claim deed to W. R. Snow for the consideration of $200.00 to him and wife in hand paid by W. R. Snow; said deed to be held in escrow with E. T. Brooks with a copy of this contract until on or before the 15th day of January, 1942, to be delivered to the said W. R. Snow, his heirs or assigns in the event that the said R. H. Gambill and wife fail or refuse to pay the $10,000.00 and other consideration above mentioned to the said W. R. Snow for the conveyance to them of the said property above mentioned by the said W. R. Snow.

"The said $200 to be turned over by the said escrow holder to the said R. H. Gambill in the event the said R. H. Gambill and wife fail or refuse to carry out this contract and agreement as heretofore set out. Said property to be conveyed to R. H. Gambill free of all liens and encumbrances."

Said contract was signed and acknowledged by plaintiffs and Dr. Snow. On December 26, 1941, HOLC executed a deed to said property to Dr. Snow and his wife. The deed showed payment of $2,000 cash and the execution by Snow of a note for $8,000 secured by a deed of trust on said property. On January 14, 1942, Judge Brooks, Dr. Snow's attorney, wrote Mr. Gambill as follows:

"You recall that you have an escrow agreement with Dr. W. R. Snow that terminates tomorrow, and the contract provides in the event you are able to pay the $10,000.00 cash you will get the property. In the event you fail to pay the $10,000.00 I am to turn over the deed and deliver to you the $200.00 check left with me as escrow holder of Dr. Wm. R. Snow. The reason I am writing you this letter is you haven't a telephone and the Doctor indicated today that he wanted to be sure that the matter was fully closed tomorrow as his circumstances are such that it must terminate fully. So be sure to advise me promptly tomorrow your wishes in the matter as to whether or not you will take the property or for me to deliver the deed to Dr. Snow and the money to you."

Mr. Gambill testified that he thought he received said letter on the night of January 14th; that about 5 o'clock P.M. on January 15, 1942, he obtained the following letter from H. O. Wooten:

"Mr. Henry James, Trustee
"Abilene, Texas

"Dear Sir:

"I have just talked with Mr. R. H. Gambill in reference to taking a $2500.00 part in a loan of $10,000.00 on his home place, with the condition that the following names participate on the same basis:

| | |
|---|---|
| S. M. Jay | $2500.00 |
| E. R. McDaniel | 2500.00 |
| J. C. Reese | 1250.00 |
| J. D. Miracle | 1250.00 |

"The loan to be for one year at 8 per cent with executed deed from Dr. Snow to you, as Trustee, to be forfeited at the end of twelve months from date unless paid in full.

"Yours truly,
"(Signed)    H. O. Wooten
"H. O. Wooten

"With the further condition that Ellis Douthit pass the title as being clear in you as Trustee, and that there is no onerous restrictions on the free use of the property."

It is further undisputed that Hon. Roy L. Duke was the attorney employed by Dr. Snow to examine the title to the property in controversy, and that as a condition to his approval of the title, he required the execution of a quit claim deed by the Gambills. Dr. Snow testified to the effect that he approached Gambill on the streets of

Abilene and asked him to execute a quit claim deed; that he then learned Gambill was anxious to buy said property, which had formerly been his home for many years; that though Dr. Snow had a profit made in the property, because of his kindly feeling toward Gambill and Gambill's affection for his old home, Snow agreed to give Gambill an option to purchase the property without any profit to Snow; that Gambill asked for a period of sixty days to raise the money necessary to exercise the option; that Snow informed Gambill he could not let him have so much time; that Snow explained it was necessary for him to close his deal with HOLC before that time; that he told Gambill, in substance, that he would not be willing for Gambill to assume payment of Snow's note to HOLC; that Gambill could have until January 15, 1942, to exercise his option to purchase by paying $10,000 and interest and expenses to Snow; that Snow expected to take Gambill's money to pay HOLC, since Snow was making no profit on the deal; that Gambill expressed the opinion that his relatives would furnish the money.

There is evidence that on the day following the expiration of the period fixed by the option contract, within which Gambill was permitted under the terms of the written contract to exercise his option to purchase, Snow telegraphed HOLC for an abstract to the property, and that it was delivered to Gambill by HOLC on January 17th. There is no evidence of an express contract for an extension of the time within which Gambill might exercise his option to purchase the property, nor is there any evidence that the extension, if any, was for a definite time, and there is no evidence that there was any consideration for an agreement to extend the time within which Gambill might exercise his option to purchase. Snow's testimony is to the effect that Gambill never tendered the purchase price, interest, or expenses, until he did so in his petition filed about two years thereafter; that between the date of the purchase price of the property by Snow and the date this suit was filed by Gambill, about two years, the property had increased in value so that it was at the latter time worth about three times the price paid for it by Snow.

The evidence tends to show that other persons named in Wooten's letter to James committed themselves verbally to Gambill on the proposition that they would share with Mr. Wooten in making up the sum of

$10,000 mentioned in the Wooten letter. Wooten's letter to James, Trustee, dated January 15, 1942, wherein Wooten inferentially agreed to take a $2500 part in a loan of $10,000 to Gambill, was conditioned upon the four named persons taking a fixed part in said loan; upon the loan being for one year at 8 per cent interest and to be forfeited at the end of twelve months unless paid in full; that a deed be executed by Dr. Snow to Mr. James as Trustee, and that Hon. Ellis Douthit approve the title as being clear in Mr. James as Trustee, and that there were no onerous restrictions on the use of the property. The evidence does not conclusively show that all conditions precedent to making the loan were, or for that matter, ever would have been, performed. The evidence shows that three or four days after the expiration of the time fixed by the option contract Snow declined to execute a deed to James, Trustee. This refusal, from defendant's standpoint, appears to have been based on the fact that he had given Gambill an option to purchase the property without any profit to Snow because of his kindly feeling toward Gambill and Gambill's affection for his old home, but that, since the property was worth more than Snow paid for it, he was not willing to execute a deed to anyone but Gambill; that Snow was unwilling to give anyone but Gambill the benefit of his bargain.

Plaintiffs' first point is that since defendants did not in their answer specifically deny that plaintiffs were ready, able and willing to perform their contract, nor that defendants tendered the purchase price within the time limit fixed in the option contract, nor within the extended time limit, plaintiffs were not required to prove that they were ready, able and willing, at the times inquired about, to pay the consideration, or that they then tendered the purchase price. Texas Rules of Civil Procedure, rule 54 provides:

"In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party."

Plaintiffs cite in support of said contention the above rule, Brown v. Reichling, 86 Kan. 640, 121 P. 1127, and Lipscomb v. Amend, 49 Tex.Civ.App. 300, 108 S.W. 483, 485. Assuming, without deciding, that said rule is applicable, we are of the opinion plaintiffs waived any right they may have had to rely on said rule and to now contend that by defendant's failure to specifically plead such matters in defense that plaintiffs were not required to prove them. At the beginning of the trial it was stipulated: "The question in the law suit is: Did Gambill comply with the contract, and did Snow refuse to perform?" In Texas Employers Ins. Ass'n v. Marsden, 131 Tex. 256, 114 S.W.2d 858, the defendant failed to file an answer of any kind. The case was tried in the same manner as it would have been had the defendant filed a general denial. Our Supreme Court held that the failure to file an answer was waived by virtue of the fact that "the parties proceeded upon the theory that there had been a general denial entered." The matters that plaintiffs assert should have been specifically denied in defendant's answer in order to raise said issues were vigorously contested on the trial. The record does not disclose exception to the pleadings, objection to the testimony relative to said issues, nor objection to the submission of said issues on the theory that plaintiffs were not required to prove said matters because defendant had failed to specifically deny them. If the failure to file an answer, as required by statute, is waived by trying a case as if an answer had been filed, as was held in the Marsden case, then, under like circumstances, for the same reason it must be held that a litigant waived the right to complain of a failure to specifically deny facts required to be so denied by a rule of procedure. Our Supreme Court has definitely held that under such situation a litigant cannot contend for the first time on appeal that the answer was insufficient to raise the issues contested and determined in the trial court. Bednarz v. State of Texas, 142 Tex. 138, 139, 176 S.W.2d 562.

Plaintiff's second point is: "The plaintiffs were ready, able and willing to perform their contract and offered to perform in ample time." Since the jury has found that plaintiffs were not ready, able and willing to pay the consideration on January 15, 1942, the time stipulated in the written contract, nor within a reasonable time thereafter, we presume plaintiffs mean

to contend that the contrary to findings 1 and 5 was established as a matter of law. We have repeatedly reviewed the testimony relative to said issues and are convinced they were not conclusively established. See McGuire v. City of Dallas, 141 Tex. 170, 180, 170 S.W.2d 722, 723. In determining whether the evidence is sufficient to raise the issues submitted and answered, or whether the court should have instructed a verdict for the plaintiff, we are required to view the evidence in the light most favorable to the party prevailing in the trial court and to indulge against the instruction every inference that may properly be drawn from the evidence. If the record reflects any testimony of probative force in favor of the party the verdict is instructed against, or if reasonable minds can come to a different conclusion from the evidence, an instructed verdict is improper. White v. White, 141 Tex. 328, 331, 172 S.W.2d 295; Fidelity & Deposit Co. of Maryland v. First Nat. Bk. of Teague, Tex.Civ. App., 113 S.W.2d 622, 623.

The findings of the jury that Gambill was not ready, able and willing on January 15, 1942, nor within a reasonable time thereafter, to pay the agreed consideration, precluded a judgment for plaintiffs. 38 Tex.Jur. 715. The option contract provided that Gambill should have "until the 15th of January, 1942, in which to pay W. R. Snow the sum of $10,000.00 and interest * * *." If Gambill was not ready, able and willing to pay the consideration on January 15, 1942, as the option contract required, nor within a reasonable time thereafter, plaintiffs were not entitled to judgment for specific performance of said contract. Richardson v. Hardwick, 106 U. S. 252, 1 S.Ct. 213, 27 L.Ed. 145; Pope v. Hoopes, 2 Cir., 90 F. 451, 453.

Plaintiffs present the further points, (3) that since the contract provided for a consideration, "no personal equation was involved and time was not of the essence of the contract;" (4) that where a contract for the sale and purchase of land is supported by a consideration and the purchase price is to be paid in cash, it remains in force until repudiated by the purchaser or until barred by limitation; (5) that Gambill's requirement that the property be conveyed to James, Trustee, furnished no legal justification for Snow's refusal to perform the contract; (6) that since Snow refused to convey the property to James, Trustee, "within three or four days after January 15, 1942, tender of the purchase price was not required."

Points 3 and 4 may be correct propositions of law under some circumstances but are not deemed applicable here. The contract here involved was not an ordinary contract for the purchase and sale of realty. Neither the contract, nor any evidence introduced, show an agreement that Snow was to purchase and hold the land "in trust" for Gambill, as plaintiffs alleged. The contract simply granted Gambill an option to purchase within the time and in the manner therein stated. Michael v. Busby, 139 Tex. 278, 284, 162 S.W.2d 662; Friedsam v. Rose, Tex.Civ.App., 271 S.W. 417, 421. Time is of the essence of an option to purchase real estate. If an optionee elects to exercise his privilege to purchase, he must do so within the time and manner specified in the option contract. 43 Tex.Jur. 100, 101; Williston on Contracts, Vol. 2, p. 1634, sec. 853; Johnson v. Portwood, 89 Tex. 235, 239, 34 S.W. 787; Houston v. Newsome, 82 Tex. 75, 80, 17 S.W. 603; Grier v. Stewart, Tex.Civ.App., 136 S.W. 1176; Wilbanks v. Selby, Tex. Civ.App., 227 S.W. 371, 373; 12 Am.Jur. 547, sec. 56; G. S. Johnson Co. v. Nevada Packard Mines Co., D.C., 272 F. 291; French v. Hay, 89 U.S. 231, 22 Wall. 231, 22 L.Ed. 799; 58 C.J. 1095, § 366; 49 Am. Jur. 141, sec. 119. The contract conclusively shows an agreement that Gambill was to exercise his option by paying the consideration to Dr. Snow on or before January 15, 1942. At least a question of fact was raised that it was contemplated that Snow was to use Gambill's money to pay Snow's debt to HOLC. Gambill did not pay the consideration to Snow on said date, or at any other time. See Killough v. Lee, 2 Tex.Civ.App. 260, 21 S.W. 970. We cannot agree with plaintiff's contention that since the purchase price was to be paid in cash, the contract remained in force until repudiated by Gambill, or until barred by limitation. See Baker v. Fell, 135 Tex. 375, 144 S.W.2d 255; Knox v. Brown, Tex. Com.App., 277 S.W. 91, 94.

In answer to issue 4, the jury found that after January 15, 1942, Snow consented to an extension of time within which Gambill might pay the consideration. The jury further found that Gambill was not ready, able and willing to pay the consideration within a reasonable time after January 15, 1942. Since no definite time for the extension was claimed, if it be as-

sumed that the extension agreement was valid and enforceable, Gambill had only a reasonable time in which to exercise his option to purchase. If he was not ready, able and willing to pay the consideration within a reasonable time after the extension his rights under the extension agreement terminated and he was not entitled to enforce specific performance of the option contract. However, as heretofore stated, there is no evidence of an express agreement to extend the time. If such an agreement existed, it was an implied one. The extension, if any, was for no definite period of time. There was no consideration for such an agreement and it was not binding. "Where an option on consideration is for a definite time, an extension of the option without consideration constitutes a new agreement and the option is revocable * * * before acceptance." 17 C.J.S., Contracts, § 50. See also, Austin Real Estate & Abstract Co. v. Bahn, 87 Tex. 582, 584, 29 S.W. 646; Kirby v. American State Bank, Tex.Com. App., 18 S.W.2d 599, 600; 63 A.L.R. 1532; Tsesmelis v. Sinton State Bank, Tex.Com. App., 53 S.W.2d 461, 463, 85 A.L.R. 328, 330, Note; 6 R.C.L. 604; Cummins v. Beavers, 103 Va. 230, 48 S.E. 891, 106 Am.St. Rep. 881, 887, 1 Ann.Cas. 986; Coleman v. Applegarth, 68 Md. 21, 11 A. 284, 6 Am.St. Rep. 417, 420; 21 L.R.A. 129, Note; Fischer v. Wood, Tex.Civ.App., 119 S.W.2d 114, 116; Nassar v. Nelson, Tex.Civ.App., 112 S.W.2d 757, writ refused.

■■■■ Under the situation that existed, it was immaterial whether or not the reason given by Snow for refusing to execute the deed to James, Trustee, was valid. The option had then expired, and Snow could have then refused to execute a deed to anyone, regardless of the reason for his refusal. "Options must be accepted according to their terms * * *." Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, 564. See also, 6 R.C.L. 604; Fisher Iron & Steel Co. v. Elgin, J. & E. Ry. Co., 7 Cir., 101 F.2d 373, 374; Pomeroy's Eq.Remedies, Sec. 806, 807. "'While an option agreement may make time expressly essential, even in the absence of such express stipulation, if the agreement is an option, the time of performance in the manner prescribed in the agreement ordinarily is regarded as essential, and performance, unless excused or waived, must be made within the time stipulated, or within valid extensions thereof." 58 C.J. 1095, § 366.

■■■■ The parol extension found by the jury is within the statute of frauds. Article 3995, sec. 4, Vernon's Ann.Civ.St. Defendants did not allege the statute as a defense. There was no occasion for them to do so. Plaintiffs did not allege a parol agreement extending the time provided for in the written contract within which plaintiffs were required to accept, or exercise, their option to purchase; they merely alleged time was not of the essence. Such a parol agreement would have had the effect of altering and adding to the written contract. Had plaintiffs alleged a parol agreement to extend the time, doubtless defendants would have asserted the statute as a defense and such defense would have been sustained. Robertson v. Melton, 131 Tex. 325, 329, 115 S.W.2d 624, 625; Michael v. Busby, 139 Tex. 278, 283, 162 S.W.2d 662; Adams v. Hughes, Tex.Civ.App., 140 S.W. 1163, 1169, writ refused; O'Mara v. Hall, Tex.Civ.App., 134 S.W.2d 348, 349; Gardner v. Sittig, Tex.Civ.App., 188 S.W. 731, 733; Id., Tex.Com.App., 222 S.W. 1090; 27 C.J. 328, § 417; 37 C.J.S., Frauds, Statutes of, § 232.

■■■■ Point 7 is to the effect that the judgment should be reversed because there was error in connection with the examination by defendants of the witnesses Duke and Gambill concerning some purported trouble of Mr. Gambill. Such testimony was elicited in connection with the testimony of Gambill to the effect that he called on Judge Brooks on the night of January 15, 1942, and informed him he had raised the $10,000; that on said occasion he went to Brooks' office and to his home and talked to him concerning his readiness to exercise the option. Judge Brooks' testimony was to the effect that he did not remember talking to Mr. Gambill on said occasion about such matters; that he represented Mr. Gambill in connection with other matters. Defendants were attempting to show, as they had the right to do if they could, that if Mr. Gambill did talk to Judge Brooks at said time that he went to see him and talked to him about other matters concerning which he had him employed, and that he did not visit Judge Brooks nor talk to him about acceptance or his readiness to accept the option. The evidence pertinent to this inquiry is too lengthy to permit setting it out in the opinion. However, we are convinced that said point does not present reversible error.

The judgment is affirmed.