### T. D. LIPSCOMB v. W. S. AMEND.

Decided February 22, 1908.

**Sale of Land—False Issue—Misleading Charge—Evidence Without Pleading.**

In a suit for specific performance of a contract for the sale of land, the following propositions discussed and approved:

(1). It is error for the trial court to charge the jury to pass upon an uncontroverted fact.

(2). A charge which is misleading in its language and inapplicable to the facts is erroneous.

(3). It is improper to permit an issue to be raised by proof which is not raised by the pleadings.

Appeal from the District Court of Sherman County. Tried below before Hon. L. S. Kinder.

*Madden & Trulove, E. C. Hyde* and *Wm. Harris,* for appellant.— It is error for a trial court to charge the jury to find upon an uncontroverted fact. Wintz v. Morrison, 17 Texas, 387; International & G. N. Ry. Co. v. Lewis, 63 S. W. Rep., 1091; Denham v. Trinity County Lumber Co., 73 Texas, 82.

A charge which is misleading in its language and inapplicable to the facts is erroneous.

It is improper to permit an issue to be raised by proof that is not raised by the pleadings.

To entitle one to relief from a legal wrong, he should show some damages or inconveniences suffered. Girard v. Moore, 86 Texas, 675; Donald v. Carpenter, 27 S. W. R., 1056; Moore v. Cross, 87 Texas, 561; State v. Galveston, 38 Texas, 34.

*D. B. Hill* and *John W. Veale,* for appellee.—One can not be both buyer and seller. He will not be permitted to act as agent for the seller in a transaction in which he becomes the buyer, directly or indirectly; such conduct is against public policy and renders the contract void. McMahan v. Alexander, 38 Texas, 138; Weintz v. Morrison, 17 Texas, 372; Swift v. Faris, 11 Texas, 18; Armstrong v. O'Brien, 83 Texas, 640; Chase v. Veal & Co., 83 Texas, 333; Ryan v. Kahler, 46· S. W. Rep., 71; Smith v. Kripis, 2 Texas Civ. App., 267; Hahl v. Kellog, 94 S. W. Rep., 389.

STEPHENS, ASSOCIATE JUSTICE.—Appellee made a contract with appellant for· the sale of three sections of school land in Sherman County, Texas, at three dollars per acre above what was due the State, one-half cash and balance on one year's time with interest at eight percent per annum,· secured by vendor's lien. This contract was reduced to writing and signed by both parties about the 22d or 23d of January, 1906, but it was dated January 12, 1906, which seems to have been the date of an unauthorized contract for the sale of the same lands made to appellant by one H. A. ·Kight as agent for appellee, who at first repudiated the contract, denying the authority of Kight to make it, but finally made a contract himself at the same price and on the same terms. In reciting the consideration in this contract appellee acknowledges the payment of one thousand and one dollars on the purchase of the lands, which is followed by this recital: "$1880 more to be paid upon delivery of a good and sufficient warranty deed of conveyance, except the State of Texas, for the same within thirty days from this date or as soon after thirty days as the deed is ready for delivery after the title has been examined and found good, and the balance to be paid as follows:" (providing for the execution of note and the assumption of what was due the State and the reservation of the vendor's lien). · The contract concludes with this statement: "Should the title to the property not prove good, then this $1000 to be refunded, but should the said T. D. Lipscomb fail to perform this contract on his part promptly at the time and in the manner above specified (time being of the essence of this contract), then the $1000 shall be forfeited by him as liquidated damages and the above contract shall be and become null and void."

This contract was repudiated by appellee on February 17, 1906, and some months thereafter this suit was brought by appellant for specific performance and to recover damages for the breach of the contract, which resulted in a verdict and judgment against him, from which this appeal is prosecuted. ·

In declaring on the contract made with appellee appellant treated it as a substitute for a contract previously made for the sale of the same lands through one H. A. Kight, alleged by appellant to have been the agent and representative of appellee in making that sale. In explanation of the recital in the contract of the cash payment appellant alleged that he had paid this one thousand dollars in a check on the First National Bank of Amarillo, payable to H. A. Kight and indorsed by him, and that appellee had accepted it as cash. On the other hand, appellee specifically· denied that H. A.

Kight was his agent at the time of the alleged sale by him to appellant, or at any time subsequent thereto, and further alleged in avoidance of appellant's allegation of agency the existence of a partnership relation between appellant and said Kight in the purchase of the lands, charging in general terms fraud and collusion between them and that he was ignorant of this relation until about the 17th day of February, 1906, when he repudiated the contract.

The proof established beyond controversy that H. A. Kight had no authority to make a sale of the lands to appellant at the date of the alleged contract between him and appellant—January 12, 1906—or at any time subsequent thereto. According to Kight's testimony he seemed to have been under the impression that he had the authority to make the sale, but when his memory was refreshed by the statements of appellee in the presence of appellant before the contract declared on was executed, he admitted the fact to be substantially as appellee positively testified—that the authority which had once been conferred on him to sell had been expressly revoked long before the sale to appellant and within a few hours after he had listed the land with Kight as agent.

As to the payment of the one thousand dollars, appellee admitted in his testimony that he agreed when the contract declared on was executed to accept a check with Kight's indorsement, which was then pinned to the contract, but he claimed that it was to be left with John Houser, the county clerk of Sherman County; while the testimony of appellant and Kight tended to prove that the papers were to be left in the hands of Kight, who held possession of them up to the time of the repudiation of the contract, although he had kept them a part of the time in the vault of the county clerk's office. The check was never at any time placed in the hands of the clerk or any depositary other than Kight. Appellee's testimony was also to the effect that it was understood that he was to wait thirty days for the cash payment.

On the 13th of February, 1906, appellee furnished an abstract showing good title, which was accepted by appellant, but repudiated the contract on the 17th of that month because he had learned that Kight was interested with appellant in the purchase, and because appellant had not paid him any money, and Kight had taken the contract and check out of the clerk's office and gone "off with it," further stating to appellant in this connection, "When you and old man Kight think you can work that kind of a deal with me, your trolley is off." As to whether Kight was interested with appellant in the purchase of the land there was conflict in the evidence.

*Opinion.*—We have experienced some difficulty in disposing of the issues raised by this appeal, and doubtless the trial court was confronted with a like difficulty in submitting the case to the jury, owing to the manner in which the issues were presented and developed by the contending parties. For instance, a large part of the record is occupied with the development of the issue of fraud arising out of the alleged conflicting relations of Kight to the respective parties, appellant taking the position in his pleadings that Kight was the

authorized agent of appellee in the sale of the lands to him, and appellee taking the position, in answer to this false position of appellant, that Kight and appellant were jointly interested in the purchase, which issue was submitted in the charge as one of the determinative issues in the case, whereas it was clear from the evidence that in attempting to make a sale to appellant Kight acted without authority, and when the sale was reported to appellee he promptly repudiated it on this ground, although he afterwards concluded to make the sale himself.

The principle invoked by appellee was clearly inapplicable to this state of facts and the case was therefore tried largely on a false issue, for which both parties were more or less responsible. But whether appellant is entitled to claim a reversal of the judgment on this ground, that is, whether he is in position in this court to insist that the issue of fraud was not an issue in the case because Kight was not the agent of appellee, after he had alleged in his petition that he was such agent, is a question which seems pertinently to suggest itself, but which we do not find it necessary to determine in view of other features of the appeal which we proceed now to consider.

In the second paragraph of the charge, to which error is assigned, the court instructed the jury that if appellant had failed to pay appellee "said sum of $1000, according to the terms of said contract, and within the time provided for in said contract, and his failure to do so was not caused by any act of the defendant," to find for the defendant. This charge was not altogether applicable to the case made by the pleadings and testimony and had a tendency, we think, to mislead the jury. The deed recited the payment of the one thousand dollars, and appellee admitted that he had agreed to accept the check with Kight's indorsement in lieu of the cash, and it was thus that appellant had pleaded the payment. There was no controversy, therefore, between the parties on this point. There was a controversy which arose subsequently as to whether the conduct of Kight, viewed as the partner or agent of appellant, in not placing the check in the hands of John Houser, the county clerk, or in not delivering it to appellee within the thirty days and before he repudiated the contract, would authorize appellee to treat the contract as broken by appellant. But in a subsequent paragraph of the charge the court, in a measure at least, submitted this as a separate issue, although it does not seem to have been set up in the answer.

We are also of opinion that the court erred in admitting the testimony complained of in the twenty-third, twenty-fourth and thirty-fourth assignments, tending to prove a mutual abandonment of the contract and in not instructing the jury, as requested in the third special charge, to disregard any evidence tending to show such abandonment, for the reason that this issue was not made by the pleadings. True, the evidence seems to have been admitted for a different purpose, but we can not agree with appellee that it was admissible "as evidence of original bad faith on the part of Lipscomb and went to the question of the credibility of the testimony of that

gentleman." The case was clearly not one of original bad faith on the part of appellant, and it was incompetent.- to introduce an irrelevant issue for the purpose claimed.

The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and remanded.*

CONNER, Chief Justice, not sitting.