GRIER v. STEWART.

(Court of Civil Appeals of Texas. April 15, 1911.)

1. VENDOR AND PURCHASER (§ 78*)—OPTION—TIME AS ESSENCE OF CONTRACT.

In an option contract for the sale and purchase of real property, time is of the essence of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125; Dec. Dig. § 78.*]

2. SPECIFIC PERFORMANCE (§ 32*) — CONTRACTS ENFORCEABLE—MUTUALITY OF OBLIGATION — PERFORMANCE BY PARTY NOT BOUND.

The plaintiff was given a 30-day option to purchase real property by a contract reciting a cash consideration of $1, and by which the defendant bound himself to convey to plaintiff on his election to pay the agreed purchase price within the term of the option. In plaintiff's

action for specific performance he did not show payment or tender of payment, or any waiver of payment by the defendant during the life of the option. Held that, until plaintiff complied with the terms of the option, it was binding on the defendant only and was not enforceable for want of mutuality of obligation, and hence that defendant was entitled to a directed verdict.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89–99; Dec. Dig. § 32.*]

Appeal from District Court, Taylor County; Thos. L. Blanton, Judge.

Action by Harry D. Stewart against J. Y. Grier. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

J. H. Calhoun, for appellant. Ben L. Cox, for appellee.

DUNKLIN, J. By the terms of an option contract, J. Y. Grier agreed to convey to Harry D. Stewart a lot situated in the city of Abilene. The contract was dated October 13, 1909, and was to continue in force for 30 days from and after that date. The contract was never consummated, and Stewart instituted this suit for specific performance thereof, and by a second count in his petition he sued to recover the lot in the form of trespass to try title. Judgment was rendered in favor of Stewart for $156 as the difference in the contract price, $650, and $800, the market value of the lot, with $6 added to cover the expense incurred by Stewart for completing the abstract of title to the property, and from that judgment Grier has appealed.

In his petition Stewart claimed damages by reason of being deprived of the use of the property, but he did not allege the value of the lot, and the petition contained no allegation which could serve as a proper basis for the damages which were awarded to him in the judgment. The only issue presented by the pleadings was whether or not Stewart had shown himself entitled to a decree for specific performance of the contract. Grier did not interpose any plea of homestead exemption, or any other defense except that Stewart had not offered to buy the property within the period of time covered by the option. Such being the pleadings, we are unable to understand upon what theory the court allowed damages upon the basis shown and at the same time failed to decree to the plaintiff specific performance.

However, we have carefully examined the record and have reached the conclusion that the court should have given a peremptory instruction in favor of Grier, for the record shows without dispute that Stewart never paid to Grier the price of the lot and fails to show that he tendered the purchase price of the property within the period covered by the option and fails to show any waiver of that tender by Grier. Stewart testified as follows: "On the 12th day of November,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

I went to Grier's place of business, and he was not there. Later from the rooms of the Twenty-Five Thousand Club I rang him up over the Roberts phone and told him that I accepted the terms of his option, and he said, 'All right.' I said: 'Upon satisfactory deed and title I will pay you your money. I have it in my possession now ready for you.' He says, 'All right.' I says, 'I will see you in a day or two.' He said: 'Very well; all right.' I told him, when proper execution of the deed and title, I would pay him the sum stated, $650, and I had the money then in my possession for him, and he said, 'All right.' That was over the phone. That was Thursday, the 11th day of November." He further testified that he was certain this conversation occurred on the 11th day of November, rather than on the 12th, as first stated by him, and that he had no further communication with Grier until after the expiration of the option, and the foregoing is the only testimony introduced by him to show a tender of the purchase price within the period of time embraced in the option contract, which expired on November 12, 1909. If he had been prevented from making a tender of the purchase price by any wrongful act on the part of Grier, or if Grier had informed him before the expiration of the period that such a tender would be refused, then it might be said that the tender was waived by Grier. But, as shown in the testimony quoted, Grier did not refuse to execute the deed, but, on the contrary, expressed a willingness to do so, and there was no evidence to show that he refused to execute the deed during the life of the option. There was no testimony to show how long it was after the expiration of the option when Stewart next communicated with Grier relative to a consummation of the contract; but the testimony of Stewart, himself, was that it was a few days after November 11th, the date of the conversation testified to by him and set out. In his testimony Grier denied unequivocally the conversation testified to by Stewart and testified that Stewart did not offer to buy the property within the option period.

[1] As the contract was an option contract, time was of its essence, and, in order to sustain his suit, it was incumbent upon the plaintiff to show either a payment of the money or a tender thereof within the 30 days given for him to purchase it. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; 36 Cyc. 711; Rude v. Levy, 43 Colo. 482, 96 Pac. 560, 24 L. R. A. (N. S.) 91, 127 Am. St. Rep. 123; Levy v. Lyon, 153 Cal. 213, 94 Pac. 881. For other decisions, see note under section 1407, 4 Pom. Eq. Juris. (3d Ed.). Taking the plaintiff's testimony as true, he signally failed to make out even a prima facie case for recovery. The contract upon which the suit was instituted recited a cash consideration paid to Grier of $1 and did not bind Stewart to pay any sum or to per-

form any act. For the nominal consideration of $1 expressed in the contract, Grier bound himself to convey the property to Stewart for a price of $650 if the latter should elect to pay the same within 30 days from the date of the contract. This was one-sided and binding upon Grier alone. The case of Rude v. Levy, supra, was for specific performance of a written option to purchase land reciting a consideration of $1, and in disposing of that case the Supreme Court of Colorado said: "Moreover, there was practically no consideration for the option. The recital of $1 as paid is the usual provision inserted in such instruments as a matter of form, and, even if this sum was actually advanced, it would be merely nominal. It would not, alone, constitute the 'proper' or 'fair' consideration usually considered essential to a suit for specific performance. Plaintiff was not to take possession of the property, nor was he to make any improvements thereon; nor was compensation or consideration to defendant for the option otherwise stipulated or furnished. In this proceeding the absence of consideration may be shown, notwithstanding the seal. Again, not only was this option one-sided, and, until properly accepted, a nudum pactum, but it possessed other features which fairly invited the criticism of injustice and oppression made by the trial court. Had the court rested his decision upon the unfairness and inequity of the transaction, we would not have disturbed his finding and judgment. Waiving the latter consideration, however, and assuming that the option was fair and reasonable as an option, it nevertheless remains true that courts of equity do not look with favor upon such arrangements. Since the vendor cannot enforce them against the vendee, equity is not swift to enforce them against the vendor. The right to invoke against the vendor the specific performance of options, especially where there is a valuable consideration therefor, is, indeed, recognized. But since they lack the elements of a binding contract, until performance or a sufficient tender of performance by the vendee, this kind of relief is not in order."

[2] As shown in note to section 1407, 4 Pom. Eq., supra, there is a conflict in the authorities upon the question of necessity vel non of proof of tender of payment in the absence of payment, as a condition precedent for specific performance of contracts to sell in which time is not of the essence; but in suits for specific performance of option contracts the courts seem to hold with one accord that the complaining party must show performance or tender of performance by him or else defendant's waiver of performance. In order for Stewart to establish the right to a decree for specific performance of the contract made the basis of his suit, it was incumbent upon him to show default on the part of Grier, and, as Stewart failed to prove payment, tender of payment, or

waiver of payment, of the purchase price during the 30-day period named in the contract, there was no default on the part of Grier.

For the reasons indicated, the judgment of the trial court is reversed, and judgment here rendered in favor of appellant.