**OLIVER et al. v. CORZELIUS.**

No. 4576.

Court of Civil Appeals of Texas. El Paso.
June 24, 1948.

Rehearing Denied July 14, 1948.

---

[1] 1948 Criminal Code, 18 U.S.C.A. § 874.

Kemp, Smith, Brown, Goggin & White and Frank B. Clayton, all of El Paso, and Wilson & Wilson, of San Angelo, for appellants.

Jones, Hardie, Grambling & Howell, Fryer & Milstead and R. H. Feuille, all of El Paso, for appellee.

McGILL, Justice.

Appellee, Curtis F. Corzelius, and Appellant Ann Yates Oliver were formerly husband and wife. This suit was brought by appellee to specifically enforce an alleged "gentleman's agreement" by Mrs. Oliver, made after her divorce from appellee and while she was a feme sole named Ann Yates Corzelius, by which she agreed to "deed back" to him certain ranch lands and personal property located thereon, situated in three counties of the state of Colorado, such property having been transferred to her by him by deed and bill of sale dated January 5, 1944, the date of the alleged agreement to "deed back". The consideration recited in the deed was the cancellation of certain indebtedness owing by appellee to Mrs. Corzelius, and fifteen thousand dollars cash paid by her to him. The consideration recited in the bill of sale was the cancellation of certain indebtedness owing by him to her. Trial was to a jury. The judgment requires appellant, Mrs. Oliver, to sign, acknowledge and deliver to the Clerk a deed conveying all of the real estate which appellee had conveyed to Mrs. Corzelius and which she had not theretofore sold, and a bill of sale transferring to him all of the personal property located on such lands. These requirements are conditioned on appellee's having theretofore deposited with the Clerk $94,000.00, $90,000.00 of which is the amount which the jury found appellee was required to pay Mrs. Oliver to entitle him to specific performance of the agreement, and $4,000.00 of which appellee stipulated should be added to such amount.

No point is made as to the pleadings and it is unnecessary to summarize them, but we shall occasionally refer to them.

The material portions of the deed and bill of sale and releases constituting a part of each, all signed and acknowledged January 5, 1944, are:

The deed:

"Whereas, on the date of this instrument, being January 5, 1944, C. F. Corzelius is indebted unto Ann Yates Corzelius, a feme sole, in the total sum of Ninety-six Thousand Seven hundred Sixty-nine and 83/100 ($96,769.83) Dollars, as follows, to-wit:

(reciting various items)

"And Whereas, the said C. F. Corzelius has proposed to convey all real estate and ranch lands and all improvements thereon and rights incident thereto unto the said Ann Yates Corzelius in consideration of the sum of $15,000 cash to be paid to him and the full and final settlement and satisfaction of all indebtedness of any kind or character including all notes and obligations above described and all other items of indebtedness whether mentioned herein or not, owing by him unto the said Ann Yates Corzelius; and

"Whereas, the said Ann Yates Corzelius has accepted such proposition,

"Now Therefore, I, C. F. Corzelius, also known as Curtis F. Corzelius and Curtis F. M. Corzelius, a single man, of the County of El Paso and State of Texas, for and in consideration of the sum of

Fifteen Thousand And No/100 ($15,000.-00) Dollars cash to me in hand paid by Ann Yates Corzelius, former wife of C. F. Corzelius, but now a feme sole, the receipt of which is hereby acknowledged and confessed, and in further consideration of the full and final settlement and satisfaction of the above described notes and items of indebtedness owing to the said Ann Yates Corzelius, the delivery to me of the said above described notes, being hereby acknowledged, and the full and final settlement and release of any and all claims and obligations of any kind or character, whether mentioned herein or not, held by the said Ann Yates Corzelius, against me, the receipt by me of due and proper release thereof being also acknowledged, have Granted, Bargained, Sold and Conveyed and by these presents do Grant, Bargain, Sell, Convey and Confirm unto the said Ann Yates Corzelius, her heirs, executors, administrators and assigns forever, all the following described real estate situated in the State of Colorado, to-wit:

(here follows detailed description)

"I, Ann Yates Corzelius, grantee in the above and foregoing deed, hereby accept the same and in accordance with its terms and for the consideration therein recited, do hereby fully release and discharge the said C. F. Corzelius, his heirs, executors, administrators and assigns, of and from any and all claims of any kind or character, whether arising under and by virtue of the terms of the notes and instruments described therein or not, and do hereby declare all of said notes and obligations and instruments fully satisfied.

"And further in accordance with the foregoing instrument, I hereby release all the real estate described in the deeds of trust mentioned therein from the terms of said deeds of trust and each of them, and do hereby declare all the indebtedness described in said deeds of trust fully satisfied."
The bill of sale:

"Know All Men By These Presents: That I, C. F. Corzelius, also known as Curtis F. Corzelius and Curtis F. M. Corzelius, for and in consideration of the sum of One Hundred Seventeen Thousand Five Hundred Ninty-one and 57/100 ($117,591.57) Dollars to me in hand paid by Ann Yates Corzelius, formerly the wife of C. F. Corzelius, but now a feme sole, as evidenced by the endorsement on this day of a credit in such sum on a certain promissory note in the principal amount of $159,450.14, dated January 1, 1941, signed by C. F. Corzelius and payable to the order of Ann Yates Corzelius, and bearing interest as in said note provided, leaving a balance due thereon of $41,858.-57 plus interest, the receipt of such consideration being hereby acknowledged and confessed, have Bargained, Sold and Delivered, and by these presents do Bargain, Sell and Deliver unto Ann Yates Corzelius, of the County of El Paso and State of Texas, the following described personal property purchased by the said Ann Yates Corzelius from me on this date at and for the amounts set out below, which aggregate the total consideration above set out, to-wit:

(Here follows list of personal property with price of each item)

"As a part and parcel of this conveyance, the said Ann Yates Corzelius has satisfied said note dated January 1, 1941, in the principal amount of $159,450.14 to the extent of the above stated consideration for this conveyance, and in addition, has and does, by the acceptance of this bill of sale, fully release and satisfy a certain Chattel Mortgage dated June 1, 1942, signed by C. F. Corzelius, and made, executed and delivered to the said Ann Yates Corzelius, and duly recorded in Book 225, at Page 505, Chattel Mortgage Records of La Plata County, Colorado, and also recorded in Chattel Mortgage Records of Hinsdale and Archeluta Counties, Colorado, reference to the same being hereby made for all things therein contained.

Witness My Hand at El Paso, Texas, this the 5th day of January, 1944."

The contract which appellee seeks to specifically enforce is an alleged verbal agreement which the jury found the parties had entered into prior to the delivery of the deed and bill of sale and as part of a consideration for the delivery of said in-

struments, having substantially the terms set forth in the following letter:

"Ann Yates Corzelius
Hotel Paso del Norte,
El Paso, Texas.
 January 5th, 1944

Mrs. Hugo A. Auler,
1408 Wathen Avenue,
Austin, Texas.

Dear Tince:

I have today closed a deal with Curt on the Colorado property and we have the following gentlemens agreement: That at any time within one year starting January 5th, 1944 to January 5th, 1945 should Curt pay me back all the money I have invested plus operating expenses and other expenses plus six per cent interest I have agreed to deed him the property back.

However should I see fit, within the year, to sell all of the property or even a part of it I also agreed to give him a ten day option to buy.

Please put this away for safe keeping should anything happen to me within this year as it is not for public knowledge and only between Curt and me.

 Ann Yates Corzelius."

Appellants present points in effect that the recitals of the consideration contained in the deed and bill of sale are contractual and cannot be varied or contradicted 'by parol evidence or by showing a collateral or prior oral' option contract to reconvey; that the purported option evidenced by the letter is lacking in consideration and is insufficient to constitute a written contract or' memorandum thereof within the purview of the Statute of Frauds, and is so vague and uncertain in its terms and lacking in mutuality that specific performance of the alleged option contract to "deed back" should not be granted.

▌ The recitals that the conveyance of the real estate and the sale of personal property are in consideration of the settlement and release of specific claims are contractual. 20 Am.Jur. p. 975; Mann v. Wright, Tex.Civ.App., 269 S.W. 222, Wr. Dis.; Hillman v. Graves, Tex.Civ.App., 134 S.W.2d 436,

Therefore, in the absence of fraud, accident or mistake they can not be varied or contradicted by parol evidence. Harper v. Lott Town & Improvement Co., Tex.Com. App., 228 S.W. 188; Cobb-Holman Lumber Co. v. Liechty, Tex.Com.App., 41 S.W.2d 18; Firestone Tire & Rubber Co. v. Fisk Tire Co., 131 Tex. 158, 113 S.W.2d 175; Matheson v. C-B Livestock Co., Tex.Civ. App., 176 S.W. 734.

Many other authorities might be cited. However, appellee is not seeking to enforce any contract evidenced by these instruments; he seeks to enforce a verbal contract to reconvey or "deed back" the property which the jury found the parties had prior to the delivery of the deed and which was substantially the same as set forth in the letter. While it may not be shown that such contract was part of the consideration for the delivery of the deed and bill of sale as found by the jury, it was permissible to show by parol that these instruments were the consideration for the prior parol agreement, 3 Encyc. of Evidence, p. 374(c) and were executed and delivered in part performance thereof. Thomas v. Hammond, 47 Tex. 42; Stuart v. Meyer, Tex.Civ.App., 196 S.W. 615; and authorities cited at 619, Wr.Ref.; State v. Collins & Buford Drug Co., Tex.Civ.App., 118 S.W.2d 965, Affirmed 133 Tex. 222, 128 S.W.2d 382.

There is no specific finding that the deed and bill of sale were executed and delivered as consideration for and in part performance of the oral contract to "deed back" the property, but such finding is implicit in the finding that prior to the delivery of the deed and bill of sale there was a verbal agreement having substantially the same terms as set forth in the letter; therefore the agreement to "deed back" is supported by a valid consideration. Gwyanne v. Mann, Tex.Civ.App., 240 S.W. 1035.

▌ The letter standing alone is clearly insufficient to constitute a memorandum of the agreement to "deed back" the real estate within the purview of the Statute of Frauds, Art. 3995, subd. 4, V.A.C.S. Such a written memorandum must contain the essential terms of a contract expressed with certainty and no part of such contract is more essential than the description by

which the subject matter thereof is to be identified. Smith v. Griffin, 131 Tex. 509, 116 S.W.2d 1064, loc. cit. 1066.

The reference to "the Colorado property" identifies no specific property and is too indefinite to comply with the statute. Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150; Osborne v. Moore, 112 Tex. 361, 247 S.W. 498; Walker Avenue Realty Co. v. Alaskan Fur Co., Tex.Civ.App., 131 S.W.2d 196, Wr.Ref.; Penn v. Texas Yellow Pine Lumber Co., 35 Tex.Civ.App. 181, 79 S.W. 842, Wr.Ref.; O'Herin v. Neal, Tex.Civ. App., 56 S.W.2d 1105, (Wr.Ref.)

The writing must furnish within itself or by reference to some other existing writing the means or data by which the particular land to be conveyed may be identified with reasonable certainty. Wilson v. Fisher and Osborne v. Moore, supra.

There is no express reference in the letter to another existing writing; but this is not essential. One writing may be connected with another either expressly or by necessary inference because of internal evidence of the subject matter and occasion, that is, that they relate to the same transaction. 49 Am.Jur. p. 699, Sec. 394, citing Searles v. Gonzales, 191 Cal. 426, 216 P. 1003, 28 A.L.R. 78; which ably discusses the rule and holds that parol testimony was properly admitted to show the circumstances under which the instruments relied upon were executed. The rule is thus stated in Restatement of the Law of Contracts, Sec. 208(a):

"The memorandum may consist of several writings (a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction."

Among other authorities cited under this section are Patton v. Rucker, 29 Tex. 402, and McElroy v. Danciger, Tex.Civ.App., 241 S.W. 1098, 1102, where the court said:

"Our decisions have frequently held where there is an express or implied reference from one document to another this incorporates the latter into the former, so as to allow the two to be considered together for the purpose of determining whether the requirements of the statute have been complied with."

Beyond question the deed and bill of sale with the releases attached and letter were executed on the same day, and the deed, bill of sale and releases were in existence and had been signed when the letter was written and signed. The instruments all bear the same date—January 5, 1944. Looking at the deed and the letter, the language in the letter "a deal with Curt (a name by which appellee was known) on the Colorado property" which "I have today closed" taken in connection with the language "I have agreed to deed him the property back" necessarily relates to the same transaction covered by the deed and by implication refers to the deed. Mrs. Corzelius could hardly "deed back" property which had not been deeded to her. Therefore, the deed may be looked to in connection with the letter to determine whether there is a sufficient memorandum to satisfy the Statute of Frauds. The description of the property in the deed is entirely adequate and the identity of the parties is made certain. Nor is it essential to the validity of the memorandum that the writing shall have been made as a memorandum of a contract. Restatement of the Law of Contracts, Sec. 209, citing Black v. Hanz, Tex.Civ.App., 146 S.W. 309.

The terms of the agreement to "deed back" the property are definitely stated in the language

"That at any time within one year starting January 5th, 1944 to January 5th, 1945 should Curt pay me back all the money I have invested plus operating expenses and other expenses plus six per cent interest I have agreed to deed him the property back."

There may be uncertainty in that portion of the letter which gives appellee a ten day option to buy, should Mrs. Corzelius see fit to sell all of the property or even a part of it within the year, because the price appellee should pay should he elect to buy all or any part of the property is not specifically stated. However, appellee is not seeking to enforce this provision of the letter. Neither is the agreement lacking in mutuality requisite for specific performance. The mutuality required is mutuality of remedy in equity at the time of the filing of the suit, not a mutuality of obliga-

tion when the contract was made. Naylor v. Parker, Tex.Civ.App., 139 S.W. 93, cited in Langley v. Norris, Tex.Civ.App., 167 S.W.2d 603 affirmed 141 Tex. 405, 173 S.W.2d 454, 148 A.L.R. 555.

Since appellee's option was based on a valid consideration mutuality of remedy would be supplied if and when he exercised his option.

It follows from what we have said that the option contract evidenced by the letter of January 5, 1944, was valid and enforceable, if the option was exercised by appellee in accordance with the terms specified.

By appropriate points appellants attack the judgment because it attempts to specifically enforce an option contract for the sale and conveyance of real estate and personal property situated in the state of Colorado; because the option contract expired by its terms on January 5, 1945, and appellee relied on an alleged anticipatory breach thereof by Mrs. Oliver on October 3, 1944, and took no action to enforce his right until January 1946, after she had changed her position by disposing of some of the property, and he was therefore guilty of laches and the equitable remedy of specific performance should have been denied him; and because the evidence fails to sustain any tender by appellee, nor that he was ready and able to perform within the time limit of the alleged option contract, and fails to sustain any anticipatory breach thereof by Mrs. Oliver.

In Combest v. Glenn, Tex.Civ. App., 142 S.W. 112, the court expressed the opinion that inasmuch as the land, the subject of the contract sought to be enforced, was situated in the Republic of Mexico, suit for specific enforcement could not be maintained in this state. Unless for some reason, a valid conveyance under the laws of the Republic of Mexico could not be effected by the execution of instruments in this state, the statement is out of harmony with the overwhelming weight of authority. In Texas a suit for specific performance of a contract for the purchase of land is in the nature of a proceeding in personam Texas Farm Mortgage Co. v. Starkey, Tex.Civ.App., 25 S.W.2d 229; Ballard v. Ellerd, Tex.Civ.App., 199 S.W. 305; and the court, where it has properly acquired jurisdiction over the person of the deferdant may decree specific performance of the contract although the land is located in another state. 94 Am.Jur. p. 163, Sec. 140; 58 C.J. p. 1118, Sec. 415. We overrule this point.

The statutory period in which actions for specific performance of a contract for the conveyance of real estate may be brought is within four years after such cause of action shall have accrued. Art. 5531, V.A.C.S.

It is the general rule that Statutes of Limitations apply to equitable actions the same as to legal actions, but under extraordinary circumstances where to deny the defense of laches would work a grave injustice, such defense may not be precluded even though the statutory period has not run. The defense must be plead and proved. Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167; Conrads v. Kasch, Tex.Civ. App., 26 S.W.2d 732, Wr.Ref., 119 Tex. 449, 31 S.W.2d 630.

A plea of laches always presents a question of fact. Turner v. Hunt 131 Tex. 492, 116 S.W.2d 688, loc. cit. 691, 117 A.L.R. 1066.

Appellants did not request the submission of an issue on this question; therefore they waived the defense of laches. Rule 279, Texas Rules of Civil Procedure.

Appellee relies on an anticipatory breach or repudiation of the contract by Mrs. Oliver on October 3, 1944, to excuse him from making a tender of performance during the life of the option, which expired on January 5, 1945. The court submitted the following issues which were all answered in the affirmative:

"Question No. 3: Do you find from the preponderance of the evidence that on or about October 3, 1944, plaintiff advised Ann Yates Oliver in substance that he was arranging to pay her in order to re-acquire the assets in Colorado referred to in the letter from Ann Yates Oliver to Mrs. Hugo A. Auler, dated January 5, 1944, and that at that time he requested Ann Yates Oliver to let him have the use of the abstracts of title covering the lands referred to in the

instruments of January 5, 1944, in order that he might complete his arrangements for obtaining the money to be paid to her in order to re-acquire such Colorado assets?"

"Question No. 4: Do you find from a preponderance of the evidence that when Plaintiff made said request, referred to in the preceding question, if he did make such request, the said Ann Yates Oliver told the Plaintiff in substance that she would not reconvey to Plaintiff the assets referred to in the foregoing questions if he was borrowing the money to be paid to her, and was mortgaging the assets in order to obtain such money, and that she would not re-transfer such assets to Plaintiff if any of the money which Plaintiff was to use to repurchase said assets was loaned to him by his brother or by Mr. Taggart, and further stated to Plaintiff that she was selling a part of the cattle for $20,000.00, and intended to sell the Granite Peaks Ranch, and that she would not give Plaintiff credit for the proceeds of the sale of the cattle or the Granite Peaks Ranch?"

"Question No. 6: Do you find from a preponderance of the evidence that but for the fact that Mrs. Ann Yates Oliver made the statements to Plaintiff inquired about in Question No. 4, if she did make such statements, Plaintiff would have, prior to January 5, 1945, tendered to Ann Yates Oliver the money which, under the letter from Ann Yates Oliver to Mrs. Hugo A. Auler dated January 5, 1944, Plaintiff would have been required to pay to Ann Yates Oliver in order to re-acquire the assets to which he would have been entitled under the letter of January 5, 1944, if he was entitled to recover any assets under such letter?"

No issue inquiring whether there was an anticipatory breach or repudiation of the contract by Mrs. Oliver on October 3, 1944, was submitted or requested, and appellants made no objection to the court's failure to submit such issue. Unquestionably the pleading and evidence were sufficient to raise such an issue. Mrs. Oliver testified in substance that on the occasion inquired about in question No. 3, appellee in discussing how he could repurchase the property stated that he could borrow so much money, to be secured by a lien on the real estate to be repurchased, from an insurance company; that he would either sell or mortgage the cattle to be re-purchased; also that he could borrow from his brother, from his friend Mr. Taggart or from his friend Dr. Larson, an additional sum which would be sufficient to close the deal if she would loan him thirty thousand dollars; that he contended he was entitled to the profits from the operation of the ranch; that she did not want to loan him the thirty thousand dollars and was not interested; that she objected to his borrowing money in view of the conversation and said she would not give him credit for the proceeds of the sale of the cattle or the Granite Peaks Ranch as she considered that "the contract was out" because of his proposition to borrow from her; that she would have taken the money appellee owed her under the contract if she had had a chance; that she would have accepted it regardless of where he got it so long as he didn't get from her.

■ In view of this testimony the statements which the jury found she made in answer to question No. 4 were insufficient to show an anticipatory breach or repudiation of the contract by Mrs. Oliver, as a matter of law. An anticipatory breach or repudiation by her was an essential element of the right to specific performance as alleged by appellee. The issue as to whether she made the statements was referable to the question of whether or not there was an anticipatory breach or repudiation, and hence was referable to appellee's ground of recovery. Since appellants did not object to the court's failure to submit such issue it must be deemed to have been found by the court so as to support the judgment within the purview of Rule 279, R.C.P.

■ When Mrs. Oliver repudiated the contract and signified her intention not to perform it, appellee elected to treat the notice of her intention as inoperative and to enforce the contract rather than to claim damages for its breach; therefore he kept the contract alive for her benefit as well as his own and remained subject to all his obligations under it. Greenwall v. Marko-

witz, 97 Tex. 479, loc. cit. 486, 79 S.W. 1069, loc. cit. 1071, 65 L.R.A. 302. 1st col.

If he elected to exercise his option to repurchase the property his obligation was to pay Mrs. Oliver back all the money she had invested, plus operating expenses and other expenses, plus six per cent interest on or before January 5, 1945, when his option expired. It is settled law that "when the transaction is in the nature of a unilateral contract—where a party is given an option to acquire a right by doing a certain thing within a specified time—it is held that time is essential and that in order to secure the right he must comply within the specified time." Johnson v. Portwood, 89 Tex. 235, 34 S.W. 596, 787; Grier v. Stewart, Tex.Civ.App., 136 S.W. 1176.

It is not contended that appellee made a formal tender of any money to Mrs. Oliver during the life of the option; the undisputed evidence clearly shows that he did not do so. However, since she had repudiated the contract and signified her intention not to be bound by it she waived her right to a formal legal tender. A formal tender is excused where it would be a vain and useless thing—an idle and useless ceremony. Burford v. Pounders, Tex.Sup., 199 S.W.2d 141 and authorities there cited. Ann. 157 A.L.R. 1325.

Nevertheless, since appellee elected to treat her repudiation as inoperative, Mrs. Oliver had the right to perform the contract should appellee tender performance before the option expired. If she would have accepted the money due her under the contract and performed her part of it had appellee tendered her all that was due her before the expiration of the option, as she testified she would have done, and appellee had not made the tender because he was unable or unwilling to do so before the option expired, it could scarcely be contended that his right to specific performance survived the life of the option. Therefore, in order to establish his right to specific performance it was incumbent upon appellee to show that he was able, ready and willing to perform his obligation to her during the life of the option. Terrell, Atkins & Harvin v. Procter, Tex.Civ.App., 172 S.W. 996, loc. cit. 1000; Brown v. Binz, Tex.Civ.App., 50 S.W. 483.

We construe the holding in Burford v. Pounders, supra, not to conflict with these authorities, or with what is said in Greenwall v. Markowitz, supra. Some of the expressions in the opinion may appear to conflict, as where the court says [199 S.W.2d 145]:

"The material consideration is that Burford offered in his pleadings to do equity." and

"It conclusively appears that whether time was of the essence of the contract (ordinarily a question of fact) was taken out of the case by Beaird's testimony, and that it would have been an idle ceremony to tender the agreed price at any time, since he made it clear that it was his intention to sell at that price only in the event of an emergency."

However, it is clear from the facts in that case that Burford was able, ready and willing to perform on February 21, 1945, which was prior to the expiration of his lease and his right to a "refusal of purchase" and the court emphatically pointed out that there was no finding by the trial court that this date was not within a reasonable time for exercising his option. Had it been immaterial whether Burford was able, ready and willing to perform during the life of the option, the trial court's finding that he "had the money" on February 21, 1945, would have been wholly immaterial. The fact that the Supreme Court mentioned this date rather than the date the suit was filed in emphasizing the fact that the trial court did not hold that the date upon which he found Burford had the money was not within a reasonable time for exercising his option, indicates to our minds that the fact that he was able, ready and willing to perform during the life of the option was regarded as of paramount importance.

Appellants' point is in effect that there is no evidence that appellee was ready and able to perform within the time limit of the alleged option contract. It will be noted that no issue was submitted on this question. Question No. 6, supra, does not embrace it. That inquiry is merely whether appellee would have tendered the money prior to the expiration of the option had it not been for the statements of Mrs.

Oliver—not whether he was ready and able to perform regardless of such statements. From what we have said it is apparent that we regard the finding in answer to question No. 6 as immaterial. Appellants' point is not based on the absence of a finding, but on the absence of any evidence. By his own testimony appellee predicated his ability to repay Mrs. Oliver on arrangements he had made for a loan from the Jefferson Standard Life Insurance Company, to be secured by a lien on the ranches to be repurchased; a loan from the El Paso National Bank to be secured by a lien on the cattle to be repurchased from Mrs. Oliver; and a loan or loans from his brother, F. M. Corzelius, a friend, Mr. Taggart, a long time associate and friend, Dr. Larson, and one of his creditors, Mr. Brockman. It is apparent from his testimony that none of these negotiations had reached the stage where any of the parties named were legally obligated to loan him any money. The fact that they had said they would do so and had even promised to do so, in the absence of an enforceable obligation binding them to do so is insufficient to show that appellee was ready and able to perform. A proposed purchaser is not able when he is depending on third parties who are in no way bound to furnish the funds to make the purchase. Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47; 12 C.J.S. Brokers, Sec. 85(b), pp. 193, 194.

Furthermore, the only evidence that the Jefferson Standard Life Insurance Company had made any commitment for a loan was the testimony of F. M. Corzelius to effect that he had taken the matter up with a Col. Wood who represented the Jefferson Standard, and that Col. Wood advised him that he had arranged for a loan; that the company "would lend a hundred or a hundred sixty-five" ($100,000 or $165,000) subject to having an inspector inspect the property. This testimony was clearly hearsay and can have no probative force or effect. We attach no importance to Mrs. Oliver's refusal to deliver abstracts of title to the property to appellee, since the evidence failed to show that he had any binding commitment for a loan.

 Relative to his willingness to perform his obligation appellee testified that

he thought Ray could show Mrs. Oliver that if he put up all the operating expenses nobody could expect to keep the profits. It is clear from his testimony as a whole that he was claiming all the profits of the cattle business which had been conducted by Mrs. Oliver on the ranches at the time he advised her he was arranging to pay her in order to reacquire the property, on October 3, 1944. There is no evidence that his attitude in this respect had changed during the life of the option. The contract is silent as to who should have such profits. When the deed and bill of sale were delivered Mrs. Corzelius immediately took possession of the property. Appellee owed her nothing. While the bill of sale and release attached thereto recites a partial release of a note for $159,450.14, leaving a balance due thereon of $41,848.57, the deed and release attached thereto releases and discharges appellee from any and all claims and obligations of any kind or character held by Mrs. Corzelius, which certainly would include the balance of $41,848.-57 referred to in the bill of sale. Therefore Mrs. Corzelius' possession was that of an owner and not of a mortgagee. In the absence of a stipulation to the contrary, until appellee notified her of his intention to exercise his option to repurchase, she had the right to deal with the property as an owner. One of the incidents of ownership of property is the right to retain earnings or profits derived therefrom. Roberts v. Armstrong, Tex.Com.App., 231 S.W. 371; Hand v. Matthews, 153 Ga. 75, 111 S.E. 408, loc. cit. 411(7); Williams v. Marmor, 321 Ill. 283, 151 N.E. 886, 46 A.L.R. 132.

Mrs. Corzelius had this right when she took possession of the property and retained it at least until appellee notified her of his desire to exercise his option to repurchase. There is no evidence that appellee was ever willing to accord her this right. In view of his testimony any inference that he was willing to do so at any time during the life of the option would invade the realm of speculation.

 Appellants' point that the evidence fails to show that appellee was ready and able to perform within the time limit of

the alleged option contract is sustained. The facts determinative of whether he was so ready and able were peculiarly within his knowledge. His own testimony affirmatively shows that when he was not ready and able to perform during the term of the option contract.

Accordingly, the judgment is reversed and rendered.

PRICE, Chief Justice (concurring).

I concur in the disposition of this case and the matters stated in the opinion of the court. This concurring opinion is written in order to set forth another reason which in the belief of the writer requires the disposition made of the case.

Let it be assumed that the letter of January 5, 1944, relied upon by appellee, is such a written memorandum as satisfies the Statute of Frauds, Art. 3995, V.A.C.S. With this assumption, it is a valid and enforceable option contract to buy the property within the year elapsing between January 5, 1944 and January 5, 1945. It is elementary that this contract was only binding on appellant—in short, it was a unilateral contract. It was an offer upon consideration to enter into a contract with appellee at his option.

In essence it was an offer by appellant to appellee to sell appellee the property referred to therein, within one year, on the condition named therein. This contract appellant could breach, but appellee could not, for it is in no way binding on him.

It is taken to be elementary that to become binding on appellant to sell and appellee to buy, the offer constituting the option must have been accepted in the manner specified in the offer. There can be no good reason advanced as to why the ordinary rules governing offer and acceptance should not be applied to an option contract such as we have here. In order to bind appellant to sell and appellee to buy, appellee must have accepted same within the time limited in the offer. Further acceptance must be in strict compliance to the offer, otherwise no contract to sell could arise between appellant and appellee.

In part the letter of January 5, 1944, is as follows:

"That at any time within one year, starting January 5, 1944 to January 5, 1945, should Curt (appellee) pay me back all the money I have invested, plus operating expenses and other expenses, plus 6% interest, I have agreed to deed him the property back."

Just what is meant by the term "other expenses" used in the offer does not appear. However, for the purpose of this discussion it is assumed that the offer is of sufficient definiteness that if appellee accepted same in strict accordance therewith that thereby arose a contract to sell and a contract to buy the property—in fact, if the offer had been complied with the equitable title would have vested in appellee. The time within which the option was to be exercised was very clear. The manner of its acceptance was also very clear "if Curt shall pay me all the money * * *". Beyond the shadow of a doubt appellee has neither paid nor tendered this amount. This option by its very terms required that acceptance be manifested by making the payment required. This was the condition of the option. In this respect there is no essential difference between the case and the case of Killough v. Lee, 2 Tex.Civ.App. 260, 21 S.W. 970. In that case the contract provided in part:

"The price agreed upon is twelve thousand dollars cash, upon payment of which the said Chas. H. Lee will make deed * * *."

The opinion was written for the court by Judge F. A. Williams, then a judge of the Court of Civil Appeals. In the course of the opinion it is stated:

"In cases of options, there is some conflict of authority as to the essentiality of the time of payment. The principles applicable are thus stated: 'Where the contract is really an offer on one side, with a provision that this offer must be assented to and accepted, when a mere acceptance is contemplated, or payment must be made, when payment was the act of acceptance contemplated at or before a specified date, then, of course, the act of assent or of payment must be done within the prescribed time, and time is, from the very form of the contract, essential. If, therefore, a

vendor agrees to convey if payment be made at or before a given date, or if an option is given which is to be accepted by payment within a given time, then the time of payment is certainly essential. In fact, payment is a condition precedent to the vesting of any right in the vendee. If, however, the offer or option given requires assent and acceptance within a given time, such assent must be made within the time prescribed, and the contract thereby becomes concluded and mutual; but whether time is essential wtih respect to subsequent performance must depend upon its object or the nature of its subject-matter.' Pom. Cont. par. 387. The contract under consideration required not simply that appellant should assent to the terms proposed within the six days, and pay the price at some subsequent time, but that he should buy within that time, paying the price in cash. This .payment was made essential by the agreement of the parties, which the court cannot disregard without infringing upon their right to shape their own contracts as they deem best."

Here, as in Killough v. Lee, supra, the act evidencing acceptance was the complete performance of the obligation arising from acceptance. Appellee concedes his right of reconveyance was conditioned upon the payment by him of a sum which he estimated at about $300,000.00.

The real question in this case is did a contract to buy this property ever come into existence?

The option contract and the contract arising from the acceptance of the option are two separate and distinct contracts upon different and distinct considerations. C. C. Slaughter Cattle Co. v. Potter County, Tex.Civ.App., 235 S.W. 295, affirmed Tex. Com.App., 254 S.W. 775.

It is said in the case of Roberts v. Armstrong, Tex.Com.App., 231 S.W. 371, that defendant in error did not by the option contract acquire any title to the land; at most he secured only the right to acquire an interest in the lands by complying at his election with the stipulations on this part. The opinion of the Commission of Appeals was expressly approved by the Supreme Court. This case likewise discusses as to who is entitled to profit before the exercise of the option.

An option to buy confers no title, it is only converted into a contract to sell by a manifestation by the optionee in the manner provided, of his election to buy. Knox v. Brown, Tex.Com.App., 277 S.W. 91.

"An option contract and a contract of sale are in fact two separate and distinct contracts, i. e., an option contract and the agreement to sell. It is not a contract by which one agrees to sell and the other to buy, but is only an offer by one to sell within a limited time and a right acquired by the other to accept or reject such offer within such time. An option is a unilateral agreement binding upon the optionor from the date of its execution, but it does not become a contract inter-parties in the sense of an absolute contract to convey and purchase until exercised by the optionee. The sale or giving of the option does not of itself constitute an executofy contract for the sale of land; this latter only arises after the option has been duly exercised." 55 Am.Jur. p. 495, par. 28.

It was found by the jury that on or about October 3rd, 1944, appellant told the appellee that she would not reconvey to plaintiff the assets referred to in the letter, if he was borrowing the money to be paid to her and was mortgaging the assets in order to obtain such money, and that she would not retransfer such assets if any of the money to repurchase said assets was loaned to appellee by his brother or by Mr. Taggart, and that she further stated to plaintiff that she was selling a part of the cattle for $20,000.00 and intended to sell the Granite Peaks Ranch, and that she would not give plaintiff credit for the proceeds of the sale of the cattle or the Granite Peaks Ranch. It was further found that but for such statement appellee would have, prior to January 5, 1945, tendered to appellant the money which under the, letter dated January 5, 1944, appellee would have been required to pay in order to reacquire the assets to which he would have been entitled under the letter of January 5, 1944. The first finding was considered sufficient, it is assumed, by the trial court, to justify the legal conclusion that appellant had

breached her contract to keep the offer open for one year. However, one looks in vain for any obligation on the part of appellant to refrain from either selling the cattle or the Granite Peaks Ranch. Such sales seem to have been provided for in a letter claimed to be the source of appellant's legal obligation. In the letter there is no provision for crediting appellee with either the sale of the land or the cattle. However, let it be assumed that there was sufficient evidence to justify a finding that appellant renounced her obligation to keep the offer open for one year, it is conceded that during the entire year she had the ability to make the conveyance. This is absolutely true as to the land, and substantially true as to the cattle.

If appellant on October 3, 1944, renounced her option contract she did not breach a contract to sell the property. There was no contract to buy and sell in existence on that date. There was lacking a mutuality of obligation for the reason appellee had never exercised his option.

In this case appellee had two optional courses open. He might elect to accept her repudiation and sue for damages; he might refuse to accept her repudiation and insist on performance. Greenwall Theatrical Circuit Co. v. E. Markowitz, 97 Tex. 479, 79 S.W. 1069, 1071, 65 A.L.R. 302.

In the above case, the following is quoted with approval:

"The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed and then hold the other party responsible for the consequences of nonperformance; but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all of his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it. On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once

bring an action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

The breach of a unilateral contract by repudiation can not bring into being a new bi-lateral contract. If appellee elected to refuse to accept appellant's repudiation of the option contract another and different contract could not come into being except by a tender by appellee of the performance of the condition which would create an unconditional obligation to sell. To hold here that the renunciation of the option by appellant had a legal equivalency to the acceptance of the offer would give appellee a two year option instead of a one year option as provided in the letter. Appellee never, prior to the filing of this action, bound himself to accept and pay for this property in accordance with the terms of the option. In order to be entitled to a conveyance, appellee should have accepted the offer entitling him to a reconveyance of the property. This offer was to convey on repayment. This repayment he never tendered during the life of the option. Appellant had the ability during the time limited in the option to perform in accordance with her offer. The attempted withdrawal of an option before the manifested intention to exercise same in accordance with its terms did not create a contract to sell and buy, mutually binding upon appellee and appellant. In order to have been entitled to a conveyance appellee should have accepted the offer entitling him thereto in the manner set forth in the offer. Payment he never tendered during the life of this option. Where there is an obligation to make a tender or payment it is thought an unqualified refusal in advance would excuse same, but not so where a tender is necessary to bring into existence a legal obligation to convey. 27 R.C.L. p. 343, par. 39. Clark y. Muirhead, 245 Mich. 49, 222 N.W. 79.

I concur in the holding that the evidence established that within the year appellee did not have the financial ability to comply

with the condition of the option. It is further my opinion that appellee never became unconditionally bound to buy this property.

## On Motion for Rehearing

PRICE, Chief Justice.

I concur in overruling the motion for re-hearing in this case. I desire to add briefly to my concurring opinion and take this opportunity of doing so.

To convert this offer into a contract, there must have been a communicated acceptance in accordance with the condition of the offer. In substance, the offer was, if you repay me the amount of my investment, etc., on or before January 5, 1945, I will re-convey. The repudiation of this promise before January 5, 1945, created neither an unconditional contract to sell, nor to buy. The repudiation of the promise before performance was due might have the legal effect to relieve appellee of the necessity of making an actual tender, coupled with his acceptance, in order to bring into being a contract binding appellee to buy and appellant to sell. The legal equivalent of an acceptance is thought to be essential to the creation of a contract of sale. It may be this legal equivalency could consist of a communicated present intention to now exercise the option in accordance with its terms, coupled with the financial ability to exercise the option. It goes without saying this acceptance must be communicated in a manner required by law.

There does not appear from the statement of facts a written expression of appellee's unconditional acceptance of the offer contained in the letter of January 4, 1944. The written communication which appellee testified he sent to appellant subsequent to October 3, 1944, and which she denied receiving, is not an unconditional acceptance of the offer. No contract binding on appellee was thereby created. If this is correct, no contract binding on appellant was thereby created.

It has been held that, in order to convert a written offer to sell into an unconditionally binding contract to buy and sell, the acceptance of the offer must be in writing. Patton v. Rucker, 29 Tex. 402; Petty v. Wilkens, Tex.Civ.App., 190 S.W. 531 (Writ Refused); Norwood v. Adams, Tex.Civ.App., 51 S.W.2d 625.

Be that as it may, under this record, there never was an unconditional oral acceptance of the offer contained in the letter of January 5, 1944, between that date and January 5, 1945. The contract appellee sought to specifically enforce never came into being, for the reason that he never unconditionally accepted the offer contained in the letter of January 5, 1944. Appellee's suit can not be construed as an acceptance of this offer. This is true for the reason that same was not filed during the period in which appellant had the right to elect to exercise his option to buy. At no time before the filing of this suit could appellant have compelled him to buy. At no time since the date of the letter of January 4, 1945, has appellee been under any legal obligation to purchase this property.